Jackson, J.,
delivered the opinion of the Court.
Considering this case in the most favorable view for the plaintiff, it is the case of two creditors, each endeavoring to secure his debt out of the same fund. Neither party had notice of the measures adopted by the other; but each was using his diligence fairly, for the purpose of obtaining payment of a just debt. The question is, Which acquired the pest legal title ? In this statement of the case, we consider Messrs. Wilson &f Co., for whom the plaintiff was agent, as the real plaintiffs, and the Messrs. Perkins &f Co., who caused the attachment to be made, as the real defendants.
The conveyance, relied on by the plaintiff, was intended as a payment, to the amount of what the goods should produce; or as security of a debt due from Wain to Wilson &f Co.
But it is objected that this consideration of the conveyance does not appear in the instrument; that there was no discharge of the debt; no receipt for the goods, with an obligation to account for the proceeds; and no writing whatever, showing the agreement, which is said to have been made between the parties; but that the instrument purports to be an absolute conveyance by Wain, for a full price received, which must have operated as a fraud upon all the other creditors of Wain. [*113] * These objections are certainly entitled to much consideration; but there is another defect in the plaintiff’s title, which we think fatal, and that is the want of a delivery to him, in pursuance of the supposed conveyance.
A few hours after this conveyance was made in Philadelphia, the defendant attached the goods in Boston. The attaching creditors are to be considered as purchasers for a valuable consideration, and, in the present case, as purchasers boná fide, and without notice of the prior conveyance to the plaintiff. The defendant took possession under their title; and the plaintiff never acquired possession
*91 The general rule is perfectly well established, that the delivery of possession is necessary in a conveyance of personal chattels, as against every one but the vendor. When the same goods are sold to two different persons, by conveyances equally valid, he who first lawfully acquires the possession, will hold them against the other. This principle is recognized in the case of Lamb & Al. vs. Durant, 12 Mass. Rep. 54, and in Caldwell & Al. vs. Ball, 1 D. & E. 205. The latter indeed was a case, not of actual delivery of goods to either party, but of delivery of the bill of lading. There were two bills of lading, signed at different times by the master of the ship; and the party, who first obtained one of them by a legal title from the owner of the goods, was held to have the best right, although the bill of lading, under which he claimed, was made the last. The endorsement and delivery of the bill of lading, in such a case, is equivalent to the actual delivery of the goods (5).
This is also the rule of the civil law. When the same thing is sold to two different persons, “ Manifesti juris est, cum, oui priori traditum est, in detinendo dominio esse potiorem.” Cod. 3. 32. 15. So Voet ad Rand. lib. 6, tit. 1, § 20, “Ad vindicationem rel duobus separaiim diverso tempore distractce, non is oui priori vendita, sed oui (pretio soluto, vel fide de eo habita) prius est tradita, admittendus est.” And Pothier, in the place cited in the argument, Vente, No. 318, *320, states the same principle; and [ * 114 ] puts the case of a sale without delivery, and a subsequent attachment by the creditors of the vendor, who, he says, would hold the goods against such a purchaser (6).
*92 There are, indeed, in the civil law, various modes of taking or delivering possession; that is, different acts, which are equivalent to actual possession (7) ; resembling, in our law, the acknowledgment and registry of a deed conveying land; receiving the keys of the warehouse, in which goods are deposited; and the case before mentioned of receiving the bill of lading of goods at sea. But it is still necessary to every conveyance of goods, that there should be an actual or legal delivery of them to the vendee.
Upon these principles, it is obvious that the defendant must prevail in this case; unless there was a legal delivery to the plaintiff, or something equivalent to an actual delivery, before the attachment made by the defendant. We can see nothing of that kind in the evidence reported. The plaintiff and Wain, it is true, supposed at the time of their negotiation, that the goods were at sea. But if they had been so, Wain had no bill of lading, and no other document or evidence of his title, to deliver to the plaintiff. The case, therefore, does not come within the rule applicable to the endorsement and delivery of a bill of lading; nor can we perceive that it comes within any other exception to the general rule, which requires an actual delivery to the vendee.
Suppose that these goods had been consigned to Wain himself, and that the bill of lading had come to his hands after this negotiation with the plaintiff. If, in that case, a third person had purchased the goods of Wain for a valuable consideration, and without* notice of any prior conveyance, and had taken the bill of lading endorsed by Wain; it would not, we think, be doubted that he would hold the goods against the plaintiff. If so, it shows that the property was not absolutely and entirely transferred from Wain to [ * 115 ] the plaintiff. It might be so, as between themselves; * but not with regard to a subsequent bona fide purchaser, for a valuable consideration; and this is the relation in which the defendant now stands (8).
*93 In the case of Lempriere & Al., Assignees of Syeds, a bankrupt, vs. Pasley, 2 D. & E. 485, Syeds before his bankruptcy had covenanted, for a valuable consideration, to assign and deliver to the defendant some goods, which he expected on board a certain ship; and he also covenanted that he would endorse and deliver to the defendant the bill of lading, as soon as he should receive it; and at the same time he did deliver the policy and letters of advice of the expected shipment, which were all the documents he then had. After he became bankrupt, the bill of lading arrived, and he immediately endorsed it to the defendant, who thereupon received the goods. It was decided that the defendant should hold them against the assignees of the bankrupt, on the ground that the assignees stood in the place of the bankrupt, and took his property subject to all equitable liens, to which it was subject in his hands. It was not contended, in the argument for the defendant, that there was a complete transfer of the property, before the bankruptcy; but only an equitable lien or interest in the defendant.
A commission of bankruptcy has been sometimes called a statute execution; but the assignees have not, in all respects under the commission, the same rights as a creditor by execution, or in our law an attaching creditor. Such a creditor, as before observed, is to be considered as a purchaser for a valuable consideration. And in the argument for the defendant, in the case last cited, it was thought material to distinguish between the rights of the assignees, and those which would have been acquired by a creditor under an execution, or a bona fide purchaser under the bill of lading; it being admitted that the latter persons, if they had first got possession, without notice of Pasley’s claim, would have held the goods against him. In the opinion of the Court, also, the same distinction is * noticed; and it is admitted that such a pur- [ * 116 ] chaser, having obtained possession, would hold against Pasley, although the assignees could not. The poipt decided in that case depended on the English bankrupt laws, and therefore does not affect the question now before us; but the course of reasoning, and the opinions expressed in it, tend strongly to confirm the opinion which we have adopted in the present case (9).

Plaintiff nonsuit.

 [The case did not turn upon the question, Who first got possession ? but upon the question, Who first got the legal title ? the Court adopting the rule of the civil law, 11 Qui prior est tempore potior est jure.” It was contended that both parties being bond fide holders of bills of lading of the same goods, the party who first got possession was to be preferred. But to this Buller, J., replied, “ Bare possession conveys no title as between persons claiming under different rights. The question here is, Who has the legal title ? ”—Ed.]

 [There is an obvious difference between the common law and the civil law in this regard. They differ in this, that by the civil law delivery, preceded by a contract of sale, is essential to transfer the right in the thing and perfect the title ; but by the common law the title is perfected by the contract of sale and payment of the price without any delivery.—Brown, Sales, 9,10,11, 393.—Comyn, Contracts, 2d ed. 293.— Parsons vs. Dickinson, 11 Pick. 354.—Tarling vs. Baxter, 6 B. & C. 360.—And since the statute of frauds, the title is perfected in cases within that statute, by the contract of sale, and the payment of the price, or delivery of the bill of sale without any actual delivery of the goods. But the civil and common law agree in this, that when the right in the thing is transferred, and the title is perfected without any fraud, for a valuable consideration, no creditor, or subsequent purchaser from the same vendor, can disturb the vendee. And the only reasons given for this in the civil law are, “ Quia in cum. est translatum dominium.”—Gomez, in leg. Tauri, 45, n. 5. And<l Nemo plus juris ad alium transferre potest quam ipse haberet.”—L. 54, de reg. Jur., and u Qui prior est tempore potior est jure.” The English statutory laws relating to reputed ownership and possession in cases of bankruptcy or insolvency, have not been adopted here; ana want of actual nossession does not bring the case within the statute of *92 Elizabeth, relating to conveyance in fraud of creditors, unless there be actual fraud. It would seem, therefore, that the title of Lanfear ought to have been preferred at least to the right of the attaching creditor, who was not like a bond fide purchaser, but, in the absence of fraud, could only succeed to the rights of the debtor.—Stair by Brodie, p. 100, note.—Furthermore, if a delivery had been necessary, the delivery of the instrument of transfer and conveyance was a sufficient symbolical delivery of the goods.—Wilkes vs. Ferris, 5 Johns. R. 335.—Ingraham vs. Wheeler, 6 Conn. 284.— Ricker vs. Cross, 5 N. H. Rep. 573.—Badlam, vs. Tucker, 1 Pick. 389.—Portland, Bank vs. Stacey, 4 Mass. 663.—Putnam vs. Dutch, 8 Mass. 287.—Tuxworth vs. Moore, 9 Pick. 349.—For the civil law, relative to symbolical delivery, see Cujas, v. 2, p. 503; E. v. 3, p. 510, D. v. 5, p. 1318 ; D. v. 8, p. 777; A. v. 9, p. 352; E.—Stair by Brodie, 132; T. 1, p. 190.—Pothier de Vente, No. 315.—Gomez in leg. Taurt, 45, No. 56, 57 58. 78, 79.—Mascard, Concl. 1189, n. 24.—Ed.]

 Vide Voet, ubi supra.—Heinec. Elem. J. C. sec. ord. Pand. Lib. 6, § 203, 204.

 [A creditor is not to be regarded as a bond fide purchaser for a valuable con sideration. He takes the property tantum and tale in the debtor’s possession.—Stair bj *93 Brodie, p. 100, in note.—Dickerson & Al. vs. Tillinghast & Al., 4 Paige, 215.—Coddington vs. Bay, 20 Johns. Rep. 637.—Ed.]

 [It has been held by the courts of Connecticut and New Hampshire, that the decision in the above case is not law.—Ingraham vs. Wheeler, 6 Conn. 284.—Ricker vs. Cross, 5 N. H. Rep. 573.—It cannot be reconciled with the decisions of the same Court in The Portland Bank vs. Stacey, 4 Mass. 663.—Putnam vs. Dutch, 8 Mass. 287.—Badlam vs. Tucker, 1 Pick. 389.—Jewett vs. Warren, 12 Mass. 300.—Joy vs. Sears, 9 Pick.. 4.— Gardner vs. Howland & Trustee, 2 Pick. 604.—A distinction has been attempted tc be *94 made between the case above reported, and the cases just cited, on the ground that th#i goods in the former case were on land at the time of the sale.—Gardner vs. Howland & Trustee, 2 Pick. 604.—But this was the case also in The Portland Bank vs. Stacey, and Putnam vs. Dutch. And, moreover, if the facts had admitted of any such distinction, there seems to be no good reason for making any distinction in point of law between goods at sea and goods on land in a distant port or place. A distinction has been made by some courts between a transfer or sale made within the jurisdiction where the goods are, and one made without the jurisdiction.—Fox vs. Adams & Al., 5 Greenl. 245.—Blake vs. Williams & Trustee, 6 Pick. 286.—But this distinction also has no solid foundation in law.—Holmes vs. Remsen, 4 Johns. Ch. R. 460, and the cases there cited.—It is admitted by our courts that, as between vendor and vendee, the sale maybe complete, and the right in the property may be effectually transferred from the former to the latter without any delivery whatsoever.—Shumway vs. Rutter, 8, Pick. 447.—7 Pick. 56.—Butterfield vs. Baker, 5 Pick. 552.—Gardner vs. Howland, ubi supra.—But it has been held by our own courts, and in some other of the American courts, that a delivery is in all cases necessary to convey the title, so that a subsequent bond fide purchaser from, or attaching creditor of the vendor, cannot supersede it. This also is contrary to the well-established rules of the law. Whatever is sufficient to pass the property as between the vendor and vendee, is sufficient to pass the property against all other persons, excepting in case of actual fraud. For here the maxim, Nemo plus juris ad alium transferre potest quam ipse haberet, is applicable. The want of a delivery or possession, according to the terms of the deed, or writing of transfer, may be evidence of fraud, but they are not circumstances per se conclusive. Few of the English cases are applicable to this point. For most of them arise under circumstances where the laws of bankruptcy and insolvency apply.—Ed ]