CHARLES O. BROWN & another *vs.* HARLAN A. PIERCE.

One who by means of fraudulent representations made by him to their owner has procured the sale to himself of a portion of certain chattels, of which at the time he is in lawful possession, if the vendor has not done any act to disaffirm his title on the ground of such fraud, may reclaim and maintain possession of the entire portion so sold to himself, against a subsequent purchaser in good faith to whom the vendor has sold and delivered part of the same under a mistaken belief that the total quantity of chattels was sufficient to fully satisfy both sales; although such belief was induced by the fraudulent representations of the prior purchaser; and the second purchaser, in an action against the vendor on the warranty of title implied in the sale to himself, may recover the value of the chattels so reclaimed from him by the prior purchaser.

CONTRACT for breach of warranty of title to twenty-nine cords and seventy-five feet of wood, sold to the plaintiffs by the defendant, to which one Horace Thompson claimed title by force of a prior transaction between himself and the defendant. At the trial in the superior court, it appeared in evidence that the defendant owned a lot of woodland in the town of Windsor and in September 1864 made a contract in writing with Thompson by which he " let " to Thompson " all hard and soft wood," with certain exceptions, on said wood-lot, and Thompson agreed to cut the wood " for the sum of eight hundred dollars, to be paid in one hundred dollar payments so often as one hundred cords shall be cut," " the wood to be cut and piled in good marketable condition."

Four hundred cords were cut and paid for, and on April 1, 1865, Thompson informed the defendant by letter that he had cut the fifth hundred cords and wished pay therefor. On Apri.

18, 1865, he and the defendant held an interview, at which they agreed to cancel their contract. Thompson at this time repeated his statement that he had cut the fifth hundred cords, and the defendant, trusting in this statement, agreed that he should receive seventy-five cords thereof in settlement of their accounts. The defendant accordingly gave to Thompson a bill of sale of " seventy-five cords of wood " on the wood-lot, " beginning at the east end of said lot and taking all wood cut, clean as far west as is necessary to make the seventy-five cords ; " and Thompson receipted to the defendant therefor as " in full of all demands and claims on contract to date." On May 30, 1865, the defendant trusting, as formerly, in Thompson's statement of the quantity of wood cut, it not then having been piled or measured and remaining on the lot in the same condition in which it was on April 18, together with portions of the four hundred cords cut previously, " bargained to the plaintiffs seventy-five cords of the wood, and on the same day met with the plaintiffs' agent to have the same measured and to deliver it to said agent; but on measuring off sixty-four and three-eighths cords, it was found the wood would not hold out the seventy-five cords of Thompson, and no more was measured, and that amount was accordingly delivered to and accepted by the plaintiffs in lieu of the seventy-five cords ; " and a bill of sale of sixty-four and three-eighths cords was given by the defendant to the plaintiffs.

On September 29, 1865, Thompson began to measure the wood which he claimed under his settlement with the defendant of April 18, " having knowledge that twenty-nine cords and seventy-five feet of it had been measured and delivered to the plaintiffs by the defendant, as above stated ; and in the winter of 1865, Thompson took from the plaintiffs' possession, without process of law and against their remonstrance, twenty-nine cords and seventy-five feet of the wood sold by the defendant to the plaintiffs ; " whereupon the plaintiffs brought this action.

The defendant testified that only four hundred and fifty-eight cords and seventy-four feet, instead of five hundred cords, had been cut, and that had the full five hundred cords been cut, as Thompson represented, there would have been enough wood to

make out the seventy-five cords sold to the plaintiffs as well as the seventy-five cords also for Thompson; but there was conflicting testimony on this point.

On these facts, *Rockwell,* J., being of opinion that in any aspect of them the jury could not be properly instructed that they could find a verdict for the defendant, ruled that he had no legal defence, and directed the jury to return a verdict for the plaintiffs for the value of the twenty-nine cords and seventy-five feet of wood; and the defendant alleged exceptions.

*T. P. Pingree,* for the defendant.

*S. W. Bowerman,* for the plaintiffs.

BIGELOW, C. J. There can be no doubt of the rule of law that a mere contract to sell personal property, without any delivery either actual or symbolical, does not pass the title as against third persons, although it may have that effect as against the vendor. As between two *bona fide* purchasers of the same chattels, he who first obtains delivery and possession of them has the better title against the other, notwithstanding the contract of sale of the latter with the vendor may have been prior in point of time to that of the former. This principle was recognized and adopted by this court on full consideration in *Lanfear* v. *Sumner,* 17 Mass. 110, and has been often affirmed by subsequent decisions.

But this principle cannot avail the defendant in the present case. Thompson, with whom he made the first contract of sale of the wood, had actual possession of it at the time the bargain was made. By the terms of the agreement for cutting the wood described in the two contracts of sale, " all hard and soft wood on the lot," with certain exceptions not material to be taken into account in this case, was " let " to said Thompson, and he was in the actual possession of it, so that when the contract of sale was entered into between him and the defendant, no delivery was necessary or could be made by the latter in order more effectually to pass the title.

Nor can the fact that Thompson procured the sale by a fraudulent misrepresentation in any way affect the rights of the parties to this suit. Fraud does not, of itself, render a sale void

but only voidable at the election of the vendor. Until avoided or rescinded the contract of sale remains in force and the title to the property passes to the vendee. The vendor may, if he sees fit, set it aside on the ground that it was procured by fraud; but unless a rescission is made, the sale takes effect and the property passes. *Thayer* v. *Turner*, 8 Met. 550. Chit. Con. (10th Am. ed.) 815. In the present case there is nothing to show that the defendant has done any act to disaffirm Thompson's title on the ground that the sale was procured by fraud. It does not even appear that any notice of an intention to rescind the sale and claim the property has been given to Thompson by the defendant. So far as the facts are disclosed, the contract of sale between them stands as it did on the day it was entered into. On the state of facts, concerning which there was no controversy at the trial, it is clear that the defendant had no title to the wood which he had previously sold to Thompson, and of which the latter was in possession àt the time of the subsequent sale of the same wood to the plaintiff. The title of the plaintiff has, therefore, wholly failed, and he may well maintain this action on the implied warranty of title into which the defendant entered on the sale of the wood, to recover the value of that for which he had paid, but to which he obtained no title. Chit. Con. (10th Am. ed.` 471.     *Exceptions overruled.*