## FRED HARTLEY *vs.* SAMUEL ROTMAN.

Suffolk.    November 9, 10, 1908. — January 5, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Sale,* Implied terms of.

An unqualified sale of goods by the person having possession of them includes an implied warranty of title or of the right to make the sale, and, if at the time of the sale the goods belonged to another who had not authorized their sale, the buyer may surrender the goods to their owner and recover the amount of the purchase money from the seller.

CONTRACT to recover damages for the alleged breach of an implied warranty of title in the sale of certain wool by the defendant, seeking under the first count to recover $199.35 as the value of 1643 pounds of wool, and under the second count to recover $579.81 as the value of 5271 pounds of wool. Writ dated March 26, 1906.

At the trial in the Superior Court before *White,* J., the plaintiff contended that both of these lots of wool, which he bought from the defendant, in fact belonged at the time of the sale to the Underwriters Salvage Company, a corporation, from which they had been taken wrongfully.

The defendant contended that he bought the first lot from licensed boatmen who had collected it while a certain pier was being rebuilt, and that he bought the second lot from one Feinberg, who had bought it from the Underwriters Salvage Company.

The plaintiff's agent testified to the purchase of the two lots from the defendant, the first on February 21 and the second on February 28, 1905; that the wool was saturated with water and filled with charcoal at the time, had a yellow and reddish cast and was similar to a sample produced in court; that it was sent to the Norton Cleaning Works; that the plaintiff later received notice that it was claimed by the Underwriters Salvage Company; that he communicated with the defendant, who asserted that he bought the wool as heretofore stated. The plaintiff surrendered the two lots of wool to the Underwriters Salvage Company.

One Jones, the manager for the Underwriters Salvage Company, testified that the day after a fire, which occurred on pier No. 5 of the Boston and Maine Railroad on November 17, 1904, he took possession of all the property on the pier on behalf of the Underwriters Salvage Company ; that the property consisted of cutch, red lead, pipe clay, rope, rags, wool and other articles; that he placed the actual work of salvaging the property under the supervision of one Daniels; that the witness had the exclusive control of authorizing the sales; that Feinberg, through whom the defendant claimed part of the wool, purchased certain lots of cotton waste, rope and rags piled up on the pier, but no wool, and that the witness authorized no sales of wool to Feinberg; and that so far as he knew no such sales were made to Feinberg or to any other person ; that the witness subsequently went to the scouring factory at Norton, Massachusetts, and took from a lot of about five thousand pounds of wool in that factory a sample which was produced in court as above referred to, claiming it as the property of the Underwriters Salvage Company ; that he identified the property as a part of the wool on the pier· by reason of its mixture with pipe clay, its discoloration and its. general texture and appearance; that when the salvage company left the pier, the witness investigated and saw that no wool was left on the pier or in the water under the pier, and that his men went through all the ruins to gather the wool.

Daniels, above referred to, testified that he superintended the work on the pier for the Underwriters Salvage Company; that the men got all the wool, and took it to the office of the Underwriters Salvage Company; that he made the sales in person, after getting authority from Jones ; that he made sales of cotton waste, rope and rags to Feinberg, but sold him no wool or refuse piles, and that he went over to the pier until the middle of January to secure any property which might turn up.   One Jenkins corroborated Daniels.   These three witnesses all testified that whenever Feinberg removed property there was present some representative from the Underwriters Salvage Company who saw that he took only the property purchased and that he took no wool, and that no wool was, with their knowledge, taken by any person.   The plaintiff introduced the testimony of one Talbot, the owner of the scouring factory, who testified that the lot of

wool from which the sample was taken by Jones was the same lot of wool received from the plaintiff.

One Hobbs, the fourth vice-president of the Boston and Maine Railroad, testified that he had charge of insurance matters and goods damaged by fire while in the possession of the Boston and Maine Railroad. He testified, against the defendant's objection, without showing authority in writing, that he had full control of the property in the warehouse on the morning of the fire. To this the defendant excepted. He further testified that on the day of the fire he made arrangements with the Underwriters Salvage Company to take possession of all the property on the pier and to make returns to the Boston and Maine Railroad.

He further testified, on cross-examination, that the pier was used by steamship companies to land their freight, under an arrangement with the Boston and Maine Railroad; that the pier was used as a warehouse for such goods until shipped to their destination or delivered in Boston; that the pier also was used for outgoing goods which had been discharged from the Boston and Maine cars and were destined for shipment by steamer; that when such goods are delivered at the warehouse they go into the possession of the steamship company; that incoming goods discharged from steamers do not go into the possession of the Boston and Maine Railroad unless they are delivered to it for transfer, except that the Boston and Maine Railroad had a certain care over the premises and furnished patrolmen for them, and could not escape liability if it allowed those who had business on the piers to come and take away the goods which had been discharged from the steamship company. The witness could not tell what portion of the wool on the wharf was destined for Boston parties, or what was to be shipped further for the Boston and Maine Railroad.

The defendant offered the testimony of Feinberg, who testified that the wool sold by him to the defendant was all secured from undistinguishable masses of property sold to him by the Underwriters Salvage Company, composed of rags, rope, wool and other property; that after the Underwriters Salvage Company had cleaned up substantially all the debris, he purchased the remainder; that he had his men collect from beneath the pier

and beneath the water all property which had fallen through the pier; that at no time did he take away property which he had not purchased, and that representatives of the salvage company were present whenever he took away any property.

At the conclusion of the evidence the defendant asked the judge to order a verdict for the defendant. This the judge refused to do, and the defendant excepted.

The defendant also asked the judge to rule and instruct the jury as follows :

1. There is no evidence upon which the plaintiff is entitled to recover.

2. That before a recovery may be had in this action it must appear affirmatively, by a fair preponderance of the evidence, that a return, or offer of return, of the property conveyed by the defendant to the plaintiff must have been made to the defendant before this action may be maintained, unless the property was taken from the plaintiff by the true owner under operation of law.

3. That, in order to maintain this action, it must appear affirmatively that the plaintiff's possession of the articles named in the plaintiff's declaration must have been taken from him by some person, firm or corporation claiming and having a legal and paramount title to all of the goods in dispute, and that the voluntary delivery of such goods without dispossession is not such a delivery as entitles the plaintiff to maintain this action.

4. That the delivery of the goods in question by the plaintiff to any person claiming title without surrender or offer of return to the defendant, and without giving the defendant an opportunity to retake the goods, bars the plaintiff from recovery in this action.

The judge refused to give the first ruling requested, and upon the subject matter of the remaining requests instructed the jury as follows:

" When a man sells personal property to another, he impliedly warrants that he has title, that is, that he has a right to sell it, that it is his property and he has a right to sell it, and there is an implied warranty that he has such right. There is no implied warranty that nobody will make a claim against it, because whatever property you have, there may be somebody

who will make a claim against it, and there is no warranty on the part of the seller of goods that somebody won't claim it, and if the party who buys it yields to somebody's unauthorized claim, it does not give him a right to damages against the party who sold it. It is only when he yields to a legal claim that he has any rights to damage against the party from whom he purchased it, to recover back either the purchase price or the value of the goods; and so, a party yielding up property to another who demands it without process of law, that is, without a judicial determination, that is, when nothing comes from any court, does so at his peril, and can only recover in case he shows in court that at the time of the sale there was an implied warranty of title on the part of the seller, and that the seller did not have any right to sell it.

"And so, the burden is upon the plaintiff here in regard to both lots of wool, to show that Rotman, at the time he sold to Hartley, did not have any title to the things which he sold; and from that fact, if you find it to be a fact, that Rotman did not have any title at the time he sold to Hartley, then Hartley suffered damages for which he can recover one or both of these amounts. I say one or both of these amounts, because the title to the two different parcels stands upon different grounds."

The jury returned a verdict for the plaintiff in the sum of $833.69; and the defendant alleged exceptions.

*J. H. Blanchard*, for the defendant.

*P. N. Jones*, for the plaintiff.

BRALEY, J. It is conceded that at the time the wool was sold and delivered nothing was said as to the defendant's ownership. But by having possession, coupled with the act of sale, he represented himself to be the owner with the legal right of disposal, and this conduct was equivalent to an implied warranty of title in him. *Stedman* v. *Lane*, 19 Pick. 547, 551. *Dorr* v. *Fisher*, 1 Cush. 271, 273. *Whitney* v. *Heywood*, 6 Cush. 82, 86. *Bennett* v. *Bartlett*, 6 Cush. 225. *Brown* v. *Pierce*, 97 Mass. 46. *Shattuck* v. *Green*, 104 Mass. 42, 45. *Stratton* v. *Hill*, 134 Mass. 27, 29. *Boston & Albany Railroad* v. *Richardson*, 135 Mass. 473, 474, 475. See Sales Act, St. 1908, c. 237, § 13. The defendant now makes no contention that the plaintiff, having been called upon to surrender the wool to those who claimed

to be the true owners, should not have yielded possession without suit, or affording to him an opportunity to retake it, because the breach of warranty, if any, occurred at the time of the sale, when the cause of action also accrued. *Grose* v. *Hennessey*, 13 Allen, 389. *Perkins* v. *Whelan*, 116 Mass. 542. The second and fourth requests were refused rightly.

If the exception to the admission of evidence is treated as waived because not argued, the only question left for decision is whether there was testimony from which the jury could find that the plaintiff, upon whom rested the burden of proof, had returned the wool to the lawful owner. The validity of the defendant's title rested, according to his own admission, upon an abandonment of a portion of the wool, which then had been secured by the boat men from whom he made the first purchase, and a sale to his vendor by the Underwriters Salvage Company from whom he made the second purchase. There was, however, abundant proof that this board, shortly after the fire had been substantially extinguished, took and retained possession through their manager of all the property at the pier, including the wool. It also appeared that the manager alone was authorized to see to the salving and sale of the property, and, he having been called as a witness, if believed, his testimony very plainly showed that there had been no abandonment, and that, while sales of wool had been made, none of the parcels sold included the plaintiff's purchases. In this state of the evidence the first ruling requested could not properly be granted, and the third so far as it correctly stated the law was embodied in the instructions given to the jury, to whose decision the dispute was properly submitted.

We find no error of law at the trial, and the order must be

*Exceptions overruled.*