JESSIE W. BRIDGHAM *vs.* LUCIAN P. HINDS.

Penobscot. Opinion November 7, 1921.

*In sales of personal property, excepting where vendee already has possession, or the property is in the tortious possession of a third person, a delivery, either actual, constructive, or symbolical, is very essential, as against third parties. Actual delivery should be made without laches when it can be reasonably and consistently. Property, title to which has actually passed from vendor to vendee, may, however, be left by vendee in possession of vendor for a specific purpose. Delivery is a question of fact and no hard and fast rule determining it can be laid down. Acts and conduct of the parties subsequent to the alleged sale constitute pertinent evidence on the question of good faith, the probative force of which is measured by their consistency with such alleged sale.*

When the same goods are sold to two persons by conveyances equally valid, he who first lawfully acquires the possession will hold them against the other. An attaching creditor of the seller is to be considered as having purchased for a valuable consideration. Therefore, in the absence of a delivery, actual, constructive, or symbolical, an attaching creditor would not be precluded by an antecedent chattel sale of which he had not knowledge in advance of his own act.

In this case the defendant, a deputy of the sheriff of Franklin County, attached certain personal property, on a writ which he had for service. For alleged conversion of the property, growing out of its attachment and its taking, this action of trover was begun by one who claims an earlier sufficient purchase. Following an adverse verdict, defendant brings the action forward on exceptions as well as on motions for a new trial, one of the motions being in usual form and the other on the ground of newly discovered evidence. The testimony

submitted with the latter motion is so decisively interwoven with the fiber of the case as to make it appear probable that the verdict would be different were the cause submitted anew with the additional evidence.

On motion and exceptions by defendant. An action of trover to recover damages for alleged conversion of personal property by defendant who had attached it on a writ and taken possession of it, plaintiff claiming that prior to such attachment, he had purchased in good faith for value and taken delivery of said personal property, and defendant claiming that the seller of the property and the plaintiff acting in collusion to hinder, delay and defraud the creditors of the seller, fraudulently transferred said property liable to attachment, to plaintiff with no intention on the part of either that the title to the property should pass to plaintiff on account of such alleged sale. A verdict was returned in favor of the plaintiff of $1,984.78, and defendant filed a general motion for a new trial, and excepted to the charge of the Justice presiding, and subsequently amended the motion for a new trial on the ground of newly discovered evidence. Motion for a new trial on the ground of newly discovered evidence sustained. New trial granted. Consideration of the general motion for a new trial, and the exceptions, thus became unnecessary.

Case stated in the opinion.

*J. B. Merrill, and Gillin & Gillin*, for plaintiff.
*Wing & Wing, and John P. Deering*, for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, DEASY, JJ.

DUNN, J. It is a rule of law tracing of ancient lineage to an analytical past, that when the same goods are sold to two persons by conveyances equally valid, he who first lawfully acquires the possession will hold them against the other. *Jewett* v. *Lincoln*, 14 Maine, 116. An attaching creditor of the seller is to be considered as having purchased for a valuable consideration. *Lanfear* v. *Sumner*, 17 Mass., 109. Therefore, in the absence of a delivery, actual, constructive, or symbolical, an attaching creditor would not be precluded by an antecedent chattel sale of which he had not knowledge in advance of his own act, (*Cobb* v. *Haskell*, 14 Maine, 303; *Mason* v. *Sprague*, 47 Maine, 18; *Ludwig* v. *Fuller*, 17 Maine, 162), although the transaction of sale were evidenced by writing. *McKee* v. *Garcelon*, 60 Maine, 165; *Reed* v. *Reed*, 70 Maine, 504. How it comes

that a sale, even where the purchase price be paid, is, delivery lacking, ineffectual as against second purchasers, is attributable to fault and to fraudulent unfairness on the buyer's part in clothing the seller with the apparent indicia of ownership so as to permit him, as the ostensible owner, to induce others to purchase the identical things, or to extend to him a credit on the strength of belief in his ownership thereof, to their injury. *Ludwig* v. *Fuller*, supra; *Cobb* v. *Haskell*, supra; *McKee* v. *Garcelon*, supra; *Goodwin* v. *Goodwin*, 90 Maine, 23. Besides, especially where the contract is not evidenced by writing, a delivery would insure a better identity of the property sold. *Goodwin* v. *Goodwin*, supra.

"What amounts to proof of delivery," says Dickerson, J., in delivering the decision in *McKee* v. *Garcelon*, supra, "has been much discussed by courts and jurists, and where so much depends upon the subject matter of the sale, its situation and condition, the usual course of trade, and all the other attendant circumstances, together with the subsequent acts of the parties as showing their intention at the time of the sale, it will be found exceedingly difficult, if not absolutely impracticable, to lay down a general rule applicable to all cases." In substance, runs the opinion, it is highly essential to validity as against third persons, that there be a relinquishment both of ownership and possession by the vendor and of their assumption by the vendee.

Actual delivery means, as the noun and its modifier themselves clearly indicate to the understanding, a formal immediate tradition of the property to the vendee. The meaning of these words as used when applied to an affair at a haberdasher's is perfectly plain to gather, but the mind at once rejects the suggestion of attempting to apply like meaning to the sale of a ship sailing on the ocean, or of logs on the bank of a stream, or of bricks fresh and hot from a kiln. The law, however, never exacts the doing of that which is impossible or unreasonable. *Haskell* v. *Greely*, 3 Maine, 425. It permits, when the property is not present or accessible, as in the case of the ship, or is difficult of access as the logs, or incapable of practicable manual tradition, as bricks still red hot after making, what is called a constructive delivery. That is to say, to illustrate, having reference again to the ship, the giving of a bill of sale under which the vendee would be entitled to take possession of the vessel on her arrival in port; or, recurring to the instances of the logs and the bricks, where

the vendor approaching in view of the sold property with the vendee, proclaims its delivery to him; or, still further citing illustratively, when a part of the goods are delivered for the whole; or, if the goods be in the custody of a third person, the parties to the sale and purchase give such party notice of the transfer. Yet another method of making a delivery, the property itself not being at once available, is known as symbolic. A good exemplification of a symbolical delivery is that of a bill of lading duly indorsed. *McKee* v. *Garcelon*, supra.

So the rule patently is that, excepting where the vendee already has possession (*Nichols* v. *Patten*, 18 Maine, 231), or the property is in the tortious possession of a third person (*Cartland* v. *Morrison*, 32 Maine, 190), it is of the utmost importance, as against third parties, that there be a delivery actual, constructive, or symbolical. *Quincy* v. *Tilton*, 5 Maine, 277; *Ludwig* v. *Fuller*, supra; *Leisherness* v. *Berry*, 38 Maine, 80; *Vining* v. *Gilbreth*, 39 Maine, 496; *Mason* v. *Sprague*, supra; *Bethel Steam Mill Company* v. *Brown*, 57 Maine, 9; *Fairfield Bridge Company* v. *Nye*, 60 Maine, 372; *McKee* v. *Garcelon*, supra; *Farrar* v. *Smith*, 64 Maine, 74; *Reed* v. *Reed*, supra; *Goodwin* v. *Goodwin*, supra. Actual delivery is evident. With the doctrine of symbolical delivery we are not here and now concerned. Because of consequential danger to the rights of others, the principle of a constructive delivery is not one to be extended. *Cobb* v. *Haskell*, supra. When actual delivery be reasonably and consistently possible it should be had. *Brown* v. *Pierce*, 97 Mass., 46. A constructive delivery involves something more than mere oral utterance. *Edwards* v. *Grand Trunk Railway Co.*, 54 Maine, 105. A vendee must be put in situation to take possession of the property regardless of the consent of the vendor, and without doing violence to the rights of third persons. *Sawyer* v. *Nichols*, 40 Maine, 212. And the vendee must move with becoming dispatch; he should not be guilty of laches in taking possession of his purchase. *Winslow* v. *Norton*, 29 Maine, 419. In the very nature of things, in the case of a sale of bulky or heavy articles, it ordinarily is out of the question to produce evidence of a delivery and change of possession as determinative as in the case of articles more readily movable. But, formal delivery wanting, in order to validate the business as to later innocent purchasers for valuable consideration, there must be proof that ever after the sale the property continued to be in the exclusive possession or control of him who first bought it from the same seller. *Nichols* v.

*Patten,* supra. The dividing line between what constitutes a delivery valid or invalid touching subsequent buyers is not so easy to define with precision as at first glance might seem. A mere colorable change of possession, one made with the intention that the title should be transferred only in appearance and not in reality, is plainly insufficient. On the other hand, a broad statement that the buyer, following his investiture with title, might not compatibly allow the seller again to have possession of the property, would be too absurd for denial. The seller may become the bailee of the buyer. Where the title has already actually passed from the one and vested in the other, the property may be left with the seller for a specific purpose, as for transportation and delivery at another place, or, if purchased in an unfinished condition, to fit it for delivery, if the intention of the parties to that effect is fully proved. *Boynton* v. *Veazie,* 24 Maine, 286; *Bethel Steam Mill Co.* v. *Brown,* supra; *Hatch* v. *Standard Oil Company,* 100 U. S., 124; 25 Law Ed., 554. See too, *Veazie* v. *Holmes,* 40 Maine, 69; *Hotchkiss* v. *Hunt,* 49 Maine, 221; *Chase* v. *Willard,* 57 Maine, 157. A delivery is cardinal. Still no hard and fast rule as to what comprises an adequate delivery may be prescribed. Delivery is a question of fact provable by evidence direct or inferential. It has been held in the case of lumber piled in the seller's yard, that pointing out the several piles to the buyer and telling him to take them away, did not protect the negotiation from later attaching creditors, the buyer not exercising dominion over his purchase through several intervening months. *Cobb* v. *Haskell,* supra. Again, the transaction was upheld in a case where a farmer, in good faith, by a witnessed deed, for a paid price, sold five cows to a buyer to whom, approaching and pointing out the particular cattle he said, in the presence and hearing of a witness, "I deliver you this stock free from all incumbrance;" whereon, synchronously, the farmer at the buyer's request became a bailee for hire of the cows, without the cattle leaving the one barn down to the time of their attachment ten days afterward by the seller's creditor. *Goodwin* v. *Goodwin,* supra. He who knew the jurist who wrote the court's opinion in the Goodwin case, will readily visualize him entering with anxious and cautious steps upon rather narrow grounds, yearning to do right or just to all concerned, as he was so quick to sense when his practised eye had discerned integrity and fairness.

In the sale of chattels, as in other concerns of matter or substance, the good faith attendant, when the claim of a stranger standing on the footing of an innocent purchaser for valuable consideration presents, looms largely as a dominant factor. What conclusion upright and reasonable men would likely draw as, seeking to maintain the law of right in manifest supremacy, they might look into that of the past for the indispensable constituent of a valid delivery, is always appropriate in critical survey.

Reduced to its elements that which is to be dealt with here is this:

The defendant, in his office as a deputy of the sheriff of Franklin County, had for service a writ sued out in an action against one Alcanzo D. Newcomb, then residing at Farmington. For the purpose of making an attachment of property on the writ, he went to the homestead premises of Mr. Newcomb, on June 21, 1920, and then and there made attachment, as he testifies, of a pair of gray horses, one set of double harness, a Fordson tractor, a Republic truck, and other personal estate. At the time, Mr. Newcomb, who, for the purposes of this case, had had unencumbered title to the property, and his wife were in Boston; their sons, the eldest some twenty years of age, being in charge of affairs at home. By arrangement with the boys, who had communicated by telephone with their parents, the officer did not immediately remove any of the property, but either he himself or a fellow deputy remained upon the premises, keeping the attachment continuously in custody and charge, until Mr. Newcomb's home-coming a few days afterward, when the deputy took it all away. Mr. Newcomb testifies that on returning home he told the officer that the property had earlier been sold and delivered to this plaintiff. The deputy says that Newcomb said nothing beyond telling him to take the stuff and be gone with it. Be this as it may, while the officer was yet at the Newcomb place, and before he had taken the property from there, a Bangor lawyer telephoned that a client of his was the owner thereof by purchase. The notification was in turn communicated to the attorney for the attaching creditor. For alleged conversion of the property, growing out of the attachment and the taking, this action of trover was begun. Following adverse verdict, defendant brings the case forward on exceptions, as well as on motions for a new trial, one of the motions being in usual form and the other on the ground of newly discovered evidence. In our view, the newly discovered evidence motion is decisively interwoven with the fiber of the case.

This plaintiff and Mr. Newcomb are cousins. Plaintiff says that while at Newcomb's house, one day a week before that of the deputy sheriff's arrival, his cousin suddenly and unexpectedly proposed to sell him the property in question, and also another pair of horses, a disc harrow, a plow and an automobile, for a cash consideration at the moment not otherwise defined than that it would be attractively advantageous to the buyer. Says the plaintiff, when he had shown me the horses, the tractor, harrow and harnesses, Newcomb backed out a seven passenger Buick automobile and getting in we started for Carrabasset, a place, as the court takes notice, more than thirty miles away. As we rode along, Newcomb asked what I would be willing to pay for the automobile, together with the other property that he had exhibited to me, and inclusive also of a truck at Carrabasset. I said, so in epitome continues plaintiff's version, two thousand dollars if all is as you say, but first show me the truck. Newcomb assented. After examining it, plaintiff states that he made known his approval to Newcomb, and that he told men who were standing near of his purchase of the truck. On the way back, it was agreed between Newcomb and himself, or so he says, that the former should retain the horses in his keeping and work them for their owner's profit on a public road under construction in the vicinity, pending plaintiff's use for them on a farm that he contemplated buying near his own home; but, endeavor elsewhere to buy a cart being vain, the horses never were so worked. Seemingly, after the unsuccessful search for a cart, plaintiff proffered his check in payment of the price of his purchase, which Mr. Newcomb declined to receive, insisting upon cash; proclaiming meanwhile delivery of the property. Plaintiff left for Old Town where he was living. Three days later he and Newcomb met in a Bangor law office; a bill of sale was drafted, executed and delivered; the grantor received plaintiff's check for the full consideration, which check was promptly paid by the local bank on which it was drawn. Besides enumerating the items of property already mentioned, the bill of sale describes a double wagon, of purchasing which plaintiff disclaims recollection. From the time that he was at Farmington and Carrabasset, plaintiff never again saw the property, or any of it, nor made effort so to do, until after the attachment. Corroborating testimony is given by Mr. Newcomb, who explains that he sold at a sacrifice, being pressed for money. There is discrepancy in their testimonies respecting

the wagon; plaintiff's statement, as we have seen, is that he sought to buy a cart from some other person, whereas Mr. Newcomb says plaintiff was seeking to buy a tip body for the wagon he had already bought of him. But in the main the two men say much alike. And their sayings are strengthened here and there by the testimony of Mrs. Newcomb; her evidence, however, going only to things said and done after the men had returned from Carrabasset.

At the trial, it was contended by defendant that plaintiff had said, in the course of conversation early after the attachment, that the deal was not closed at Farmington; that the offer there made was rejected, to be later renewed and accepted at Bangor where, on delivery of the deed, the purchase price was paid, albeit the plaintiff did not, in the four days that lay between the purchase and the attachment, busy himself to possess what he had bought, and at the time of his so speaking did not know the whereabouts of the automobile, even. So much for the trial term record.

The testimony appropriately submitted with the motion on the ground of newly discovered evidence makes it appear probable that the verdict would be different were the cause submitted anew with the additional evidence. *Parsons* v. *Railway*, 96 Maine, 503. The defendant and the sheriff of Franklin County testify that, one day a month after the trial, they saw the very automobile in Newcomb's garage, Mrs. Newcomb then claiming ownership, and snow tracks indicating its recent use. So the testimony of two witnesses, neither of apparent interest, to the effect that the tractor was at Dead River, forty miles distant from Farmington, as the court observes distance, on the certain day that plaintiff says it was delivered to him in the last named town, and that it continued to be in use at Dead River for a week still longer, presents an aspect not seen in the original portrayal of the case. Standing out in prominence, for it would be passing strange if both vendor and vendee were unmindful of statutory requirement, is the showing by the Secretary of State that official registration of the automobile remained in Newcomb's name throughout the year of the alleged sale. This is supplemented by testimony that, barring a short time in the summer of that year, Mr. Newcomb continued to use the vehicle until deep snow prevented. Likewise, testimony that the asserted vendor continued on his own account to work the pair of horses that though sold were not attached, and that the harrow and the plow remained indefi-

nitely in his possession for no especial reason, tends indicatively to reveal, till dissolving light shall fade it from mental screen, that there never was delivery of the chattels a conversion of which is claimed, good as against him attaching.

Plaintiff's learned counsel rightly urge that in order to sustain a motion on the ground of newly discovered evidence, it must be made to appear not only that the evidence is admissible and material, but that it is in legal contemplation newly discovered; that it is other than that which might have been known had diligence been used, and that it must reach beyond the mere impeachment or contradiction of a former witness to the merits of the controversy, and so extend pointing out that on a retrial of the case a different result would be reasonably probable. *Linscott* v. *Orient Insurance Company*, 88 Maine, 497. The contention is salutary. Public policy looks to the finality of trials; it looks benignly to a finality, not unduly deferred, with justice reigning. The practice of the noble profession of the law is not a game. What the rule of reason might regard as diligent conduct under one set of circumstances, it might brand under another as lethargic. There are limitations even to what a defendant in an action of tort must be held reasonably to anticipate. Quite true is it, as counsel so properly press upon attention, that much of the supporting testimony is of acts and occurrences succeeding the trial. But evidence of things happening after a trial—the subsequent particular acts of the parties to the alleged sale in relation to it—may be considered as newly discovered. *Mitchell* v. *Emmons*, 104 Maine, 76. Where, as here, conceding arguendo its truth and force, there is evidence of after trial occurring acts directly tending to make certain the material point that at best was not far outside the cloud-land of doubt before, then, in slight paraphrase of the words of former Chief Justice Savage, such is evidence of a condition existing at the trial, and shedding newly discovered light on that condition. *Southard* v. *Railroad Company*, 112 Maine, 227.

The motion for a new trial on the ground of newly discovered evidence is sustained. Let the case be tried again, plaintiff and defendant, each in his turn, throwing upon its issues, in the effulgent brightness of competency and relevancy, the light of the evidence that he may have.

As already indicated, this conclusion obviates necessity for consideration either of the usual form motion or of the exceptions.

> *Motion for a new trial on
> the ground of newly dis-
> covered evidence sustained.
> New trial granted.*