SMITH, SHERIFF, *v.* THE COOPER MARBLE CO.

(Decided December 1, 1933.)

Mr. *G. W. Reed,* Mr. *J. E. Hare* and Mr. *John C. Barkley,* for plaintiff in error.

Mr. *J. R. Hill* and Mr. *P. F. Reed,* for defendant in error.

SHERICK, P. J. On June 1, 1931, the Cooper Marble Company sold to the Murray Memorial Company four monuments. These chattels were delivered to the Murray Company on an open account. It is conceded that title to the monuments passed at that time. The Murray Company thereafter became financially involved. On June 29, 1931, representatives of the two companies met and agreed that title to these stones should be revested in the Cooper Company, which at the time proposed to credit its Murray Company account with the sale price of the articles.

On July 30, 1931, the Cooper Company mailed the Murray Company its credit memorandum which was

accompanied by a letter. The Murray Company made no reply to this communication, and the goods remained in the possession of the Murray Company.

The articles were commingled with other stock and were not earmarked. On August 15, 1931, the monuments were billed on consignment to Beiter Bros. of New Comerstown by the Cooper Company.

While the goods remained in the Murray Company's possession, a creditor, the Vermont Marble Company, obtained a judgment against the Murray Company and caused an execution to issue. A levy was made on other articles, but not upon the stones in question. Later, on August 29th, an alias execution was issued and these monuments were levied upon. The sheriff was then notified that such were the property of the Cooper Company. On September 12th the Cooper Company served the sheriff with written notice of its claim of ownership and demanded a trial to the right of property, as provided by Section 11741, General Code. The sheriff, however, having received an indemnity bond from the judgment creditor, disregarded the provisions of the section, and proceeded to, and did on the same day, sell the goods to the Vermont Company.

This action for damages was thereupon commenced by the Cooper Company as against the sheriff, a verdict obtained, and judgment entered in its favor, from which the sheriff prosecutes error.

The cause was tried, and the jury charged, upon the theory that, when the sheriff proceeded to and did sell the property without first resorting to a trial to the right of property, he acted at his peril.

The sheriff entertains a different theory of the law, and insists that the court erred in its charge, in the admission of evidence, and in its refusal to grant a new trial. He further insists that the judgment is against the manifest weight of the evidence and that it is contrary to law. Other errors are complained

of, which may be disregarded for the reason that such are not well taken.

It is asserted that General Code Section 8406, with its supporting authority, should have been followed in the trial of this cause. The section provides:

"When a person having sold goods continues in possession of the goods, or of negotiable documents of title to the goods, and such retention of possession is fraudulent in fact or is deemed fraudulent under any rule of law, a creditor or creditors of the seller may treat the sale as void."

This section is a part of an act enacted in 1908, known as the "Uniform Sales Act", 99 Ohio Laws, 413 (421). We do not find that the above section has ever been commented upon by an Ohio court, but the principle embodied therein has been considered by two courts since the statute was enacted. *Peoples Savings Bank & Trust Co.* v. *Jos. Joseph Brothers Co.*, 16 Ohio App., 45, 48, and *Hallet & Davis Piano Co.* v. *Starr Piano Co.*, 85 Ohio St., 196, 201, 97 N. E., 377. In the last-named case it is said: "It may be conceded that as between the parties where there has been a sale of specific goods, and especially where the price has been paid, the title will pass without a delivery of the goods. This, however, is only a presumption and it does not ordinarily obtain as against creditors and innocent purchasers from the vendor. As to such third parties, it is the general holding that there must be not only a delivery to the vendee claiming the goods, but there must be an actual and visible change of possession. 35 Cyc., 304."

It is therefore the sheriff's claim that title never passed back from the Murray Company to the Cooper Company, there being no delivery, either actual, constructive, or symbolical, and hence the Vermont Company had a perfect right to levy on their undelivered chattels and to sell the same in satisfaction of its judgment; and that he, the sheriff, was not required to pro-

ceed under Section 11741, General Code, to have it determined which claimant had the right to property.

The question for this court to determine, that must be decisive of this suit, is whether it is the law and policy of this state that retention of possession and apparent ownership by a vendor raises a conclusive presumption of fraud as against a prior vendee of the seller; or is it to be considered that such a presumption is only *prima facie* evidence of fraud and therefore rebuttable?

We would first remark that the evidence in this record does not establish or prove that such retention of possession was fraudulent in fact. It therefore follows that further inquiry must be directed to the meaning of the words "or is deemed fraudulent under any rule of law", which appear in Section 8406, General Code. If the Vermont Company is an innocent purchaser, or had it been a subsequent creditor, it might quickly be perceived how possession might have influenced purchase, or credit, and a fraud have been perpetrated, such as the law recognizes and against which it grants relief. If this be the intendment of the act, little trouble is encountered in construing it. But, on the other hand, if the words import a meaning that retention of possession is in and of itself a conclusive presumption of fraud, then under such a rule of law it must be understood that the policy of this state is that possession is all important in all cases, irrespective of all reason for the rule. It is our view that the very words used are indicative of the Legislature's intent, and that, where reason for the rule is not present, the rule may not be invoked.

We recognize that the last line of this section does not include the words "innocent purchaser", but employs the words "creditor or creditors". An innocent purchaser, however, upon payment, in the event of his failure to gain possession, would at once become a creditor of the vendor. We therefore hold the intent

of the words used, that is, "creditor or creditors", is to mean innocent purchaser, or subsequent creditor, as distinguished from a pre-existing creditor, as vendee, who has parted with nothing of value. To so hold comports with reason for the rule, which is without doubt what the Legislature contemplated. Its intent and purpose was to preclude the assertion of fraudulent claims, and not to vitiate legitimate transactions, or to countenance and protect pre-existing creditors who had parted with nothing of value, or had not extended credit because of possession and apparent ownership in hasty seizure of chattels in the apparent possession of a debtor.

The Vermont Company in this suit is not a subsequent creditor but was a pre-existing creditor at the time of its seizure of the goods, with knowledge of the claimed title of the Cooper Company. It, the Vermont Company, parted with nothing of value because of the Murray Company's possession or apparent ownership. Now, is the Vermont Company an innocent purchaser? If so, such a conclusion can only be reached upon the doctrine of a conclusive presumption of fraud, and this, to our notion, was not the legislative intent, as heretofore indicated.

The author of a well-considered note appearing in 21 A. L. R., 1031, at page 1033, says: "There would seem to be reasons for holding that where chattels sold are left in the vendor's possession, a subsequent purchaser in good faith for a valuable consideration, who in fact reduces them to possession, is entitled thereto, even though the first sale was bona fide and the parties acted in the utmost good faith in leaving the property with the seller. But it is not apparent that the same rule should apply with respect to an existing creditor of the vendor. Such a creditor parts with nothing of value on the faith of the vendor's possession and apparent ownership. * * * Thus, there are many cases to the effect that an attaching or execution creditor of

a fraudulent vendee is not, as against the vendor, an innocent purchaser for value, at least unless he has incurred the debt on the faith of the apparent ownership of the property by the vendee.''

Numerous adjudications from fifteen states are there listed in support of this view, and to them we would direct attention. This same volume, at page 1024, reports the recent case of *Bridgham* v. *Hinds,* also reported in 120 Me., 444, 115 A., 197. The court in that case adopted the rule of conclusive presumption of fraud, and rightly so, for the attaching creditor had contracted his debt after the sale in reliance on the possession and apparent ownership. Both reason and authority should have required that view, for the attaching creditor was in fact an innocent purchaser for value.

We are not unmindful that the Supreme Court in the *Piano Company case, supra,* uses the words ''creditors and innocent purchasers''. But we believe the court intended by the word ''creditors'' to mean subsequent creditors, or such creditors as had parted with something of value, relying in good faith upon the vendor's possession of the goods, indicative of title. That case does not present a question like the one now being considered, but was a situation where a vendor had sold a chattel to one and later sold the same article to another who had paid the purchase price and taken possession. We think the cases are distinguishable and that the conclusions herein arrived at are not at variance with the principle therein announced.

It is therefore our conclusion that the sheriff was bound to give heed to the demand for a trial to the right of property, that he acted at his peril in the course pursued, and that the judgment should be affirmed.

*Judgment affirmed.*

LEMERT and MONTGOMERY, JJ., concur.