GEORGE L. COON, APPELLEE, V. DRAINAGE DISTRICT NO. 1, RICHARDSON COUNTY, APPELLANT.

FILED DECEMBER 23, 1915. No. 18193.

New Trial: NEWLY DISCOVERED EVIDENCE. A motion for a new trial on the grounds of newly discovered evidence will be sustained when the showing made in support thereof tends strongly to show that evidence materially affecting the amount of recovery, given by the prevailing party, on a point not suggested by the pleadings, was untrue, and the defeated party might not reasonably have anticipated the same and controverted it on the trial, and the showing made would require a different verdict.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Reversed.*

*Kelligar & Ferneau* and *A. R. Keim*, for appellant.

*C. F. Reavis, contra.*

MORRISSEY, C. J.

Drainage district No. 1, of Richardson county, instituted *ad quod damnum* proceedings in the county court, and appraisers were duly appointed. They made an award of damages of $676. The owner of the land prosecuted an appeal to the district court, but filed no petition, and trial was had upon the issues made by the transcript, the answer and the reply. The tract of land through which this right of way was taken comprised approximately 45 acres, and the drainage district, by way of answer, set up that the total benefits to the tract, as adjudged by its board of supervisors was the sum of $1,890, that the apportionment of costs for the construction of the drainage canal was $710.57, and asked that the net difference, to wit, $1,179.43, be offset against any consequential damages which might be due the property owner; also that, at the request of the property owner, the location of the ditch had been changed, and he was therefore estopped from claiming any damages.

The reply admitted the amount of the benefits and the apportionment of costs of construction, alleged that the canal was not built in accordance with the report of the engineer and the plans and specifications adopted by the drainage district; that it was not constructed on the line of survey, nor was the canal of the width and depth called for by the plans and specifications; that the drainage district accepted the canal, although it is entirely different as to location, width and depth from the plans and specifications adopted and on which the benefits to the land were fixed and determined. There was a prayer for consequential damages caused by the construction of the ditch, as well as all actual damages, and that the drainage district be denied the right to set-off as prayed in its answer.

The jury returned a general verdict in favor of plaintiff in the sum of $1,132.57, and also made answer to four special interrogatories, finding: First, that the value of the land taken was $312; second, that the amount of consequential damage was $2,000; third, that the ditch differed materially from the ditch provided by the plans and specifications; fourth, that the changes were not made with the consent of plaintiff. Judgment was entered on the verdict, and the drainage district has appealed, relying upon three principal assignments of error. First, because the court submitted interrogatory 3, to wit: "Does the ditch, as constructed through the Coon land, differ materially from the ditch provided by the plans, specifications, and maps adopted by the drainage board?" To this interrogatory the jury returned an affirmative answer. Defendant now complains that this presented to the jury a question not properly triable in *ad quod damnum* proceedings. It is true that the appeal could bring to the district court for decision by the jury only the questions that were covered by the award, but defendant, by its answer, injected this issue into the record. The question may have been entirely foreign to the real issue, but in the instructions the court did not permit the jury to take this into con-

sideration in arriving at the amount of their verdict, and we are inclined to take the view, contended for by plaintiff, that interrogatories 3 and 4 were submitted by the court to meet the question of estoppel which defendant itself raised by its answer. As we do not see that defendant was in any sense prejudiced by the submission of these interrogatories, it is unnecessary to discuss them further.

The second assignment complains of the admission of testimony showing the sum paid for the bridge constructed over the ditch. By the construction of this canal the land was divided, leaving about five acres upon one side and about 35 acres on the other. Plaintiff testified that it was necessary to have a bridge; and, over the objection of defendant, he was permitted to testify that the bridge cost $1,250. This was followed by the testimony of the bridge builder, who testified that he "got $1,250." The better course would be to show the necessity for its construction, that competent men were engaged to build it, and then show its cost. But the assignment directed against the ruling on the motion for a new trial presents a more serious question. A number of witnesses testified as to the value of the land both before and after the appropriation and construction of the canal. Plaintiff testified that the land prior to the construction of the ditch was worth $80 an acre, but after the construction it was worth $30. A number of witnesses corroborated him, while farmers and landowners in the immediate neighborhood placed the value at from $25 to $45 before the ditch was constructed and at $50 to $75 after its construction. The answer to interrogatory 2 fixed the value of the land taken at $65 an acre.

Plaintiff did not become the owner of the land until after these proceedings were commenced, but had been the agent of the owner, and testified that for several years immediately preceding the institution of these proceedings the land had yielded as a net income to the owner $9.35 an acre. This testimony having been admitted over ob-

jection, on cross-examination a hypothetical question was submitted to a number of defendant's witnesses, and they were required to place a valuation on the land based upon the supposition that it had returned the revenue testified to by plaintiff. In this way a valuation was fixed on this assumed income. At the time plaintiff claimed the land returned a net income of $9.35 an acre, it was owned by a non-resident blind woman. After the trial counsel located this woman, and secured and filed, in support of a motion for a new trial, her affidavit, with others, contradicting the testimony of plaintiff, showing that some years she received little, if any, rent, as the crops were destroyed by flood, and that she sold the land after these proceedings were instituted for $1,200.

There was no allegation in the pleadings as to the productiveness of the land, and defendant could not have anticipated that plaintiff would testify to a rental value so greatly in excess of what the former owner says it was. Mrs. Mullins has no interest in the litigation, and there appears to be no reason to doubt the truthfulness of her statements. Her sale of the land, after these proceedings were instituted, for $1,200 is a circumstance corroborative of her statement, and tends very strongly to disprove the testimony of plaintiff. We cannot believe that she would have sold the land for approximately $27 an acre if her returns therefrom were as great as testified to by the plaintiff. Defendant was bound to anticipate every legitimate claim that might be made by plaintiff under the pleadings, but cannot be charged with a lack of diligence in failing to anticipate the testimony of plaintiff as to rentals.

After deducting the acreage actually taken, there were approximately 40 acres to which consequential damages could attach, and by making an award of $2,000, the jury allowed $50 an acre, which is an unreasonable allowance under any view taken of the evidence.

The legitimate effect of the evidence offered in support of the motion for a new trial would be to require a differ-

ent verdict, and, as we find no lack of diligence on the part of the defendant, the judgment of the district court is reversed and the cause remanded.

REVERSED.

HAMER, J., not sitting.