NATHAN M. RODMAN COMPANY *vs.* PETER KOSTIS.

York.    Opinion December 30, 1921.

*A new trial is granted on newly discovered evidence, as a rule, when a different result seems ·probable.*

As a general proposition, a motion for a new trial on the ground of newly discovered evidence will be sustained if, in the exercise of the court's sound discretion, it seems probable that upon another trial there would be a change in the result.

On motion for new trial. This is an action of assumpsit brought ·by Nathan M. Rodman Company against Peter Kostis to recover for certain produce sold by plaintiff corporation to defendant. The action was tried by jury at the January term, 1921, of the Supreme ·Judicial Court in York County, and the jury rendered a directed

verdict for plaintiff, and defendant filed a general motion for a new trial. At the following May term of said court defendant filed a motion for new trial on the ground of newly discovered evidence. The newly discovered evidence motion sustained. General motion not considered.

The case is stated in the opinion.

*Willard & Ford*, for plaintiff.

*Leroy Haley, and John V. Tucker*, for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, DEASY, JJ.

DUNN, J. This plaintiff is a corporation engaging in business as a commission merchant in Boston. Defendant lives at Sanford where he has a store. The action is assumpsit on an account annexed to the writ for fifty barrels of potatoes. Plaintiff's contention is that it sold and delivered the potatoes to the defendant in two lots, the first of twenty barrels on July 2, 1920, and the second exactly one week later. Liability is flatly denied. It is uncontroverted that defendant had the potatoes. There is no dispute that the one lot was shipped directly to him from the plaintiff's store, and that the other lot, starting from the same place, eventually came to his possession from one Karadakis, a Sanford fruit man, to whom it is said that shipment was made by mistake. Defendant insisted at the trial that his vendor in both instances was a former Boston individual called Pappas, whom he had already paid for the produce. To this, plaintiff rejoined that Pappas was but an agent for the defendant. Thus there was presented a question of fact, to be determined by an examination of the concrete facts in the individual case. Decision was for the plaintiff. There is a general motion to avoid the verdict. But it need not be considered for the reason that a disposal of the case is founded otherwise.

Another phase of the situation is a motion on the ground of newly discovered evidence. Pappas, concerning whose connection with affairs the evidence at the trial had largely to do, was at that time out of the United States; "he gone away to the old country" testifies his son in supporting the present motion. His departure seems to have taken place soon after the shipment of the second lot of potatoes, and without the formality of previously paying for either shipment.

In recent years Pappas was dealing in fruits and other products.  He had had no store, but he went a daily round among the markets of his city, buying, perhaps chiefly on a commission basis, to ship at once to retailers in the State of Maine and elsewhere.  Plaintiff's president, speaking as a witness, stated that his concern had known Pappas only as "a brokerage;" that it never had sold goods to him personally; never had made charges to his account; never had received payments from him; but had done business with him merely as an intermediary, over whom and beyond whom, a sale and purchase of merchandise being effected, it looked to his principal as a sole debtor.

One day after the trial the defendant chanced to be in Boston. There in a market place he met the now testifying son.  He told him of the outcome of the lawsuit.  The son went to the house where his father had lived, and where the latter's married daughter was still living, and caused boxes of papers fetched from the cellar.  Searching among these, on a second occasion, he found, so he says, the two exhibits here presented.  These purport to be the original invoices of the particular sales.  They are typewritten on printed billheads of the plaintiff company.  If the offered lists shall stand they evidence sales to Pappas individually.  The quantities and descriptions tally with those in the writ.  So do the extensions of prices and of debits. Likewise the dates.  And, going one point more in detail than does the annexed account, they show that the respective lots were shipped to Sanford, the one to Peter Kostis and the other to John Karadakis.

Plaintiff's rejoinder is that, if accepted as authentic, the invoices are not entitled to be classified either as newly known or indicative of new evidence; assigning that reasonable diligence would have discovered and produced them at the trial.  The necessity for diligence in the procurement of evidence is recognized.  *Atkinson* v. *Conner*, 56 Maine, 546, *Kimball* v. *Hilton*, 92 Maine, 214, and *Cobb* v. *Cogswell*, 111 Maine, 336, are well considered cases on the subject, cited by the plaintiff.  But be it remembered that reasonable diligence is a relative expression.  The presumption always is that the movant did not exercise due diligence.  Presumptions of this nature are of inferential origin.  They are disputable.  When rebutted there's an end of them.  And, as Mr. Justice HANSON has shown, when apparently an injustice looms, juridical postulates are soon repelled by countervailing proof.  *Cobb* v. *Cogswell,* supra.  Quite true is it,

in literal translation of an ancient proverb, that it is for the interest of the republic that there shall be an end of litigation.   But proverbs, it has well been said, should go in pairs, for a single one tells simply half a truth.   Equally true is it that it is for the interest of this Republic that verdicts begotten by falsehood be not a fashion of the courts.   What constitutes due diligence depends on the facts of each case.   *Hagar* v. *New England Ins. Co.*, 63 Maine, 502, 505.   The evidence must not only be newly discovered but it must be strong. *Snowman* v. *Wardwell*, 32 Maine, 275.   It must be of such character, of such weight, and of such value as to make it appear to the court, not that a different conclusion necessarily must be reached, but in probability that an unlike verdict would be arrived at, were the case to be tried anew.   *Parsons* v. *Railway Company*, 96 Maine, 503; *Mitchell* v. *Emmons*, 104 Maine, 76.   The idea, never very generally prevalent, that appearances of injustice are inconsequential, was long since thrown onto the scrap-heap of exploded notions.

Plaintiff's president was its principal witness.   As the case poised he alone was its material witness.   Against him was the defendant, Greek born.   These two men, witnessing, gave virtually all the evidence; one of them it may be, did not comprehend the meaning in technical precision of the legal term "agent."   The whereabouts of Pappas, the manner of whose identity with the case was of high importance, the defendant did not know.   Perchance, had defendant sought long enough and far enough, he might have located him, though he had been gone from home a month before his own son knew where he was in Europe.   But the efforts that defendant made to find him had proved unavailing.   After the trial the invoices came into view. They seem to reveal both the probable presence of falsity designedly made and resulting glaring injustice done the defendant.   The law laments injustice.   It holds perjury in abomination.

It is the opinion of the court, in the exercise of a sound discretion, that it seems probable that upon another trial there would be a change in the result.

*The newly discovered evidence*
*motion is sustained.*
*A  new trial is granted.*