ALICE W. SHALIT *vs.* ANNIE R. SHALIT

Cumberland.   Opinion June 29, 1927.

*In an action for alienation of affections brought by a wife against her husband's mother the burden is upon the plaintiff to show that the mother maliciously alienated the son's affections. Malice is not presumed, but must be proved, and may be by evidence of wrongful and unjustifiable conduct, prompted by hostile, wicked or malicious intent.*

*Newly discovered evidence relating to damages merely, if conforming in other respects to legal requirements, may be made the basis of a new trial either unqualifiedly or as to damages only.*

In the case at bar the jury were justified in finding that all the elements necessary to maintain the action were proved.

The newly discovered evidence tends to show that the plaintiff misrepresented her physical condition, simulated disability and grossly exaggerated her illness. All this, strictly speaking, affects damages only. But her testimony undoubtedly permeated the whole case. Its inevitable tendency was to excite sympathy and create prejudice. The interests of justice require that a new trial be granted unqualifiedly and not merely as to damages.

On general motion, and also on motion for new trial on newly discovered evidence. An action for alienation of affections brought by plaintiff against her husband's mother. A verdict of $7,000 was rendered by a jury in favor of the plaintiff, and the motions for a new trial were filed by defendant. Motion for new trial on the ground of newly discovered evidence sustained. New trial granted.

The case appears in the opinion.

*Hinckley & Hinckley,* for plaintiff.

*Joseph E. F. Connolly and Harry C. Libby,* for defendant.

SITTING: PHILBROOK, DUNN, DEASY, BARNES, BASSETT, PATTANGALL, JJ.

DEASY, J.  The wife of Harold M. Shalit brings this suit against his mother.  In her writ the plaintiff declares that the defendant did "by arts, enticements and inducements alienate the affections of the said Harold M. Shalit from her, said plaintiff."  The jury returned a verdict in favor of the plaintiff for seven thousand dollars. The case comes to this Court on two motions, one general and the other grounded on newly discovered evidence.

The record is voluminous.  Not to speak of depositions, letters and documents the oral evidence taken out before the jury filled 735 pages.  Much of it is sharply conflicting.  Such material facts as are unquestioned may be summarized thus:

Harold M. Shalit of Portland, married Alice White of Boston on July 3rd 1923.  Soon after their marriage they established their home in the Marlborough apartment house at Portland, owned by the defendant.  For a time the wife's relations with her husband and his mother were harmonious.  The elder Mrs. Shalit treated the son's wife kindly and generously.  Harold was dependent upon his mother. She paid him fifty dollars per week.  This was largely a gratuity, though he performed some service for her in looking after the apartment house.  Later the family life became unpleasant.  The unpleasantness seems to have culminated when Mrs. White, the plaintiff's mother, came to Portland to visit her daughter.  After some troubles unnecessary to describe in detail Harold employed an officer to order Mrs. White to leave the premises.  She left and on January 3rd, 1924, plaintiff went back to her former home in Boston.  From that time on the plaintiff lived with her parents in Massachusetts, while her husband continued to reside in Portland.  On June 15th, 1924, in Boston, the plaintiff gave birth to a child.  The defendant provided three hundred and fifty dollars for expense of confinement. For some period, both before and after this, the husband paid his wife an allowance of at least twenty-five dollars per week.  For a time the payment of this allowance was suspended.  Harold says that by the suspension he hoped to induce his wife to return to Portland.  At the instance of the plaintiff or her father Harold was indicted and arrested in Boston for non-support.  Proceedings to compel support were also instituted in the Probate Courts of Maine and Massachusetts.  Later the instant suit was brought against the mother.  The plaintiff has always had custody of the child.  Shortly

after the child's birth it was given over to a Mrs. Casey to keep and care for. The husband made unsuccessful efforts to find and see it. Omitting many details, the above are the salient undisputed facts.

Much of the other testimony is conflicting. According to the plaintiff's evidence the six months of family life which began harmoniously and gaily, later on became intolerable to her by reason of the indifference and cruelty of her husband. He assaulted her, she says, and caused not her mother alone but herself to be evicted. She relates many incidents, some of trivial character and others more important, tending to show that her husband was under the complete control of his mother, the defendant, and that her influence brought about the estrangement and separation.

The law applicable to this phase of the case is well settled. The burden is upon the plaintiff to show that the mother maliciously alienated the son's affections from his wife. Malice is not presumed. It must be proved, but it may be shown by proof of wrongful and unjustifiable conduct.

The mother may in good faith, influenced by maternal solicitude for her son's happiness and peace of mind, advise him in his conjugal relations. Even if it appear that the parent's advice, arguments or persuasions caused the plaintiff to lose the consortium, i. e., the society, affection and aid of her husband, there is no legal remedy unless it be shown that the parent acted with hostile, wicked or malicious intent. If loss so caused and such intent appear an action lies. *Oakman* v. *Belden,* 94 Maine 280; *Wilson* v. *Wilson,* 115 Maine 341; *Multer* v. *Knibbs,* 193 Mass. 556; *Woodhouse* v. *Woodhouse,* (Vt.) 130 Atl. 758; *Thomas* v. *Lang,* (Wash.) 238 Pac. 625; *Roberts* v. *Cohen,* (Ore.) 206 Pac. 293; *Porter* v. *Porter,* (Mo.) 258 S. W., 76; 30 C. J., 119; 13 R. C. L., 1471.

Applying these legal principles to. the facts as above summarized we think that the verdict is not against law nor manifestly against the weight of evidence. The jury saw and heard the plaintiff and her witnesses and were not bound to dis-believe their testimony, though much of it was flatly contradicted. From the plaintiff's testimony, if believed, they were justified in returning a verdict for her. The defendant does not in her motion allege that the verdict is excessive.

*Newly Discovered Evidence.*

The defendant offers, relying upon it as newly discovered, the testimony of Dr. John T. Williams. The significance of the Doctor's evidence appears from the following outline:

The plaintiff testified that at the time of her child's birth she was badly injured internally; that thereafter she was in a poor state of health, unable to nurse her baby, and that by advice of her physician she put the child out to be nursed and cared for.

Upon a new trial Dr. Williams will testify, so it appears from his deposition, that he was the plaintiff's attending physician at childbirth and saw her at frequent intervals while she was in the maternity hospital and twice afterwards; that there was nothing unusual, no complications in the case; that she was able to nurse the child and that "the patient had taken the baby off the breast against my advice and put it out to board."

In order that newly discovered evidence may warrant a new trial these things must appear:

> 1.    That the new evidence is not merely cumulative. There is observable a recent tendency to qualify this requirement. See also R. S., Chap. 94, Sec. 4, relating to petitions for review. But Dr. Williams' testimony is not cumulative.
>
> 2.    It must "seem to the Court probable that on a new trial with the additional evidence the result would be changed." *Drew* v. *Shannon,* 105 Maine 562.

Besides that of Dr. Williams the defendant presents as newly discovered the evidence of Julius Langsdorf. It is unnecessary to speak of this testimony further than to say that if heard by a jury it would probably not change the result.

But Dr. Williams' testimony, if believed, would in all likelihood affect a jury verdict, at all events, as to the amount of the verdict. It would probably change the result.

> 3.    That the moving party is not chargeable with want of due diligence in failing to discover the new testimony earlier and have it at the first trial.

The story of the plaintiff told on the stand first disclosed the materiality and importance of Dr. Williams' evidence. Nothing in the

pleadings forewarned the defendant that it would be needed. The Doctor was beyond the Court's jurisdiction. After the plaintiff had given her testimony it was apparently not practicable to produce Dr. Williams' evidence at the trial.

   4. But if material evidence be newly discovered during trial and is not presently available a litigant must move for a postponement or continuance if he would seek a second trial by reason of such evidence.

A party having during a trial knowledge of material evidence which he is unable to produce cannot, unless ordered by the Court, have one trial without such evidence and later have another trial with it. This would be to give one of the litigants two days in Court and confine the other to the traditional one day. Among many authorities thus holding we cite the following: *Garage Co.* v. *Powell,* (Vt.) 123 At. 200; *Marsh* v. *Surety Co.,* (Iowa) 193 N. W., 563; *Peterson* v. *Clay,* (Tex.) 225 S. W., 1112; *McCants* v. *Thompson,* (Okla.) (115 Pac. 600); *Clark* v. *Railways Co.,* 192 Ill. Ap. 358; *Learned* v. *Transit Co.,* 49 Cal. Ap., 436 (193 Pac. 591); 20 R. C. L., 291.

But this principle though well established does not apply to the pending case. At the time of trial the defendant did not know what testimony the Doctor would give. The new evidence had not then been discovered. The defendant knew only that having been the plaintiff's attending physician Dr. Williams would be able to either corroborate or contradict the plaintiff's evidence respecting her injury and physical condition. She had no ground for making the affidavit required by S. J. Court Rule No. 15. In failing to move for a continuance or postponement she was chargeable with no want of diligence.

"The ready answer to this (claim that motion for continuance should be made) is that the defendant was not in possession of any information as to what Connery and the others would testify to upon which to have based an affidavit for continuance." *Cahill* v. *Stone Co.,* (Cal.) 138 Pac. 716. See *Keister* v. *Rankin,* 54 N. Y. S., 274; *Realty Corp.* v. *Bank,* 104 N. Y. S., 959.

   5. That the newly discovered evidence is not merely impeaching in its effect. Authorities thus holding are so numerous that it is unnecessary to cite any.

Some Courts, including our own, have said that newly discovered evidence that "contradicts" an opposing party or witness cannot be made the basis of a new trial. *White* v. *Andrews*, 119 Maine 414; *Bridgham* v. *Hinds*, 120 Maine 452; *Lowry* v. *R'y Co.*, 68 Fed. 829; *Scott* v. *McLennan*, (Mo.) 242 S. W. 143; *Railroad Co.* v. *Roberts*, (Ky.) 228 S. W. 684; 20 R. C. L., 294-5.

But it is apparent that in such cases the word "contradict" is employed not in the usual sense of "deny" or "dispute", but rather as meaning "discredit."

Not to speak of cases in other jurisdictions, this Court has several times granted new trials by reason of newly discovered evidence which denies or disputes and in that ordinary sense contradicts that of the prevailing party. *Stackpole* v. *Perkins*, 85 Maine 298; *Parsons* v. *Railway*, 96 Maine 508; *Drew* v. *Shannon*, supra; *White* v. *Andrews*, supra; *Bridgham* v. *Hinds*, supra; *Rodman Co.* v. *Kostis*, 121 Maine 90.

The true test is that if the effect of the contradiction is only to impeach or discredit an opposing party or witness in respect to his testimony a new trial will not for that reason be granted.

If the new evidence "is of an impeaching character in the sense of affecting credibility only as distinguished from having probative force by showing a different state of facts", it is not sufficient to justify a further trial. *New Amsterdam Co.* v. *Beardsley*, 205 N. Y. S., 775. See to same effect *Joslin* v. *Rhodes*, (R. I.) 122 At. 779; *Smith* v. *Smith*, 51 Wis. 665 (8 N. W., 868); *Blackburn* v. *Crowder*, (Ind.) 10 N. E., 934; *Murray* v. *Weber*, 92 Iowa, 747 (60 N. W., 492); *Sherman* v. *Collingwood*, 221 Mass., 8; 29 Cyc., 920.

If the evidence contradicted is immaterial the only legitimate purpose of its contradiction is to impeach the witness and discredit his testimony upon other and material matters. There can be no new trial based upon such newly discovered contradictory evidence. But if the testimony relates to a material issue a new trial will not be denied merely because its contradiction tends to impeach or discredit a witness.

"We base our conclusion (that a new trial should be granted) upon the fact that the false or mistaken testimony was not upon a collateral matter." *Laskofsky* v. *Collieries Co.*, 167 N. Y. S., 228.

"Though the newly discovered evidence impeaches and contradicts", a new trial may be granted "where it tends to prove facts material to one of the issues in the case." *Huggins* v. *Carey*, (Tex.) 194 S. W., 136.

Is the plaintiff's contradicted and the Doctor's contradicting testimony in this case material? The material elements to be proved in this class of cases are:

(a)   Loss or alienation of the husband's affections.

(b)   Influence of the defendant producing such loss or alienation.

(c)   Defendant's malice.

(d)   Damages.

Upon issues (b) and (c) Dr. Williams' testimony has no possible bearing. It does not relate in any degree to the defendant's acts, words or motives.

Does the Doctor's testimony relate to (a), the loss or alienation of the husband's affections? The plaintiff points out certain conduct of her husband while she, badly injured at childbirth, was so debilitated that she was unable to nurse their child and had to put it out to be nursed and cared for. Such conduct, it is said, shows that the husband's affection had been turned to indifference or something worse.

This reasoning would be sound if the husband had been informed of his wife's injury and debility, whether real or feigned. But the case is barren of evidence showing that he had such knowledge or information. The husband and wife lived in different cities and States. They did not meet. Of 72 written exhibits in the case one only is a letter from the plaintiff to her husband, before the separation and that contains no reference to any injury or debility. The state of the husband's affections cannot be tested by conditions of which he had no knowledge or means of knowledge.

But Dr. Williams' testimony, while not pertinent as to any other issue, does have a material bearing upon damages. If a wife is injured and ill she has more need of her husband's companionship, sympathy and support. If deprived of these her loss is greater. *Hardwick* v. *Hardwick*, (Iowa) 6 N. W. 639.

Authorities differ very widely as to whether a new trial will in any event be granted when the newly discovered evidence is germane only to the issue of damages. Some answer this question in the

negative.   20 R. C. L., 293.   Others, that a new trial will be decreed but only if in the light of the old evidence plus the new the verdict would be manifestly erroneous.   *St. Joseph Co.* v. *Railroad Co.,* (Mo.) 50 S. W., 85; *Whipple* v. *Railroad Co.,* (R. I.) 35 At. 305.

In our opinion neither of these theories is sound.   In other cases wherein the newly discovered evidence has related only to damages new trials have been granted solely upon that issue.   *Geer* v. *Railway Co.,* (R. I.) 67 At. 449; *Thornton* v. *Railway Co.,* (R. I.) 67 At. 451.   See *Southard* v. *Railroad Co.,* 112 Maine 227.   (Not quite in point as liability was not questioned).

But there are other cases wherein motions for new trial have been unqualifiedly sustained notwithstanding the newly discovered evidence touched simply the issue of damages.   *Chaet* v. *Goldberg,* 110 N. Y. S., 817; *Lowry* v. *Traction Co.* (Ind.) 124 N. E. 409; *Railroad Co.* v. *Fogelsong,* (Col.) 94 Pac. 356; *Coon* v. *District,* (Neb.) 155 N. W. 799.

Logically Dr. Williams' testimony is pertinent only to the amount of damages.   Upon damages, at all events, the defendant has reason to ask for a new trial.   Should a new trial be limited to this issue, as was done in *Southard* v. *Railroad Co.,* supra?

Dr. Williams' testimony, if relied upon, tends to show that the plaintiff misrepresented her physical condition, simulated disability and grossly exaggerated her illness.   All this strictly speaking affects damages only.   But her testimony undoubtedly permeated the whole case.   Its inevitable tendency was to excite sympathy and create prejudice.

In determining whether a new trial shall be granted on the ground of newly discovered evidence Courts, while keeping within well established legal limits, endeavor to do what the interest of truth and justice require.   *Barrett* v. *Railroad Co.,* 45 N. Y. 628.

In the present case we think the interests of justice require that a new trial be granted unqualifiedly and not merely as to damages.

*Motion for new trial on the ground of newly discovered evidence sustained;   New Trial Granted.*