## NORRIS v. STONEHAM.

### No. 937.

Court of Civil Appeals of Texas. Eastland.

Jan. 8, 1932.

Rehearing Denied Feb. 12, 1932.

W. H. Garrett, of Colorado, Tex., and C. L. Hailey, of Abilene, for appellant.

J. A. Johnson, of Stephenville, for appellee.

HICKMAN, C. J.

Recovery was had below on two severable causes of action. We shall first make a statement of the case applicable to one of these, and, after considering it, shall make an additional statement applicable to the other. Appellee, Mrs. H. W. Stoneham, is a married woman. She instituted this action in her own name, without being joined by her husband, against appellant, Mrs. Pearl Norris, an unmarried woman, for damages alleged to have been sustained by her on account of the alienation of her husband's affections. Her petition charged, in substance, that, beginning in the month of July, 1928, and continuing up to the date of the filing of the petition, the defendant (appellant), contriving and wrongfully intending to injure the plaintiff (appellee), and to deprive her of the comfort, society, aid, and support of her husband, and to alienate and destroy his affections for her, has unlawfully and unjustly, through her wiles and blandishments toward him, ingra-

tiated herself into his affections, and has completely gained his affections for herself to the exclusion of plaintiff, and has persuaded, procured, and enticed him to abandon her and leave her home, and to live with the defendant, whereby and on account of such unlawful, willful, and malicious acts on the part of the defendant toward the plaintiff, she (the plaintiff) has lost the comfort, society, aid, assistance, love, and support of her husband and his affections for her have been wholly alienated. The case was tried below before the court without the assistance of a jury, resulting in a judgment on this phase of the case in favor of appellee against appellant for $3,000. In deciding the issues presented we have not had the benefit of many decisions in our own jurisdiction. Few cases of this character have reached the appellate courts of Texas.

■ The first question for decision is whether appellee had the right to institute and maintain the suit in her own name, without a showing, either that she had been divorced from her husband, or that proceedings for divorcement had been instituted. There is no statute in Texas expressly authorizing the prosecution by the wife of a suit of this nature, and the argument is advanced that, since the fiction of marital unity barred her right to prosecute an action alone at common law, it follows that, absent an express enabling act, the right to maintain the action does not exist in Texas. Is the common law on the subject of marital rights, in the absence of statutory regulations to the contrary, in force in Texas? Chief Justice Gaines answered that inquiry in Barkley v. Dumke, 99 Tex. 150, 87 S. W. 1147, in this language: "The title of the act of January 20, 1840, entitled 'An act to adopt the common law of England, to repeal certain Mexican laws, and to regulate the marital rights of parties,' indicates that the rights of married persons were to be defined by statute, and not to be governed by the rules of the common law. The provisions of the act with reference to married persons are so inconsistent with the rules of the common law as to show an intention to maintain in reference to marital rights a radically different system. The fact that these provisions were incorporated in the act · which adopted the common law is of itself significant of the purpose of the Legislature not to apply the rules of the common law as to the property rights of husband and wife. In this connection it is notable also that the statutory rules which were adopted are taken in the main from the Spanish law, which then prevailed in the republic. So striking is this fact as to justify Chief Justice Hemphill in saying, in Burr v. Wilson, 18 Tex. 370: 'Our laws on marital rights are in substance but a continuation of the rules of Spanish jurisprudence on the same subject-matter'; and again, in Bradshaw v. Mayfield, 18 Tex. 29:

'But the common law is not, and never has been, of force in this state on the subject of marital rights.'"

But, even if we have adopted the common law as to the right of a married woman to maintain a suit of this character, the common law which we adopted was not the common law of England as it existed in 1840. As is clearly pointed out by Chief Justice Brown in the case of Grigsby v. Reib, 105 Tex. 597, 153 S. W. 1124, 1125, L. R. A. 1915E, 1, Ann. Cas. 1915C, 1011:

"* * * 'The common law of England,' adopted by the Congress of the republic, was that which was declared by the courts of the different states of the United States. * * * If we adopt that as our guide and source of authority, the decisions of the courts of those states determine what rule of the common law of England to apply to this case.

"The effect of the act of 1840, supra, was not to introduce and put into effect the body of the common law, but to make effective the provisions of the common law, so far as they are not inconsistent with the conditions and circumstances of our people. Land Co. v. McClelland Bros., 86 Tex. 185, 23 S. W. 576, 1100, 22 L. R. A. 105."

When resort is had to the decisions of the highest courts of the several states of the United States to determine the rule of common law, as declared by these courts, a conflict is disclosed. In most of the states enabling statutes have been enacted, but, as stated in 30 C. J. § 873, p. 1120: "On the other hand the rule has been stated independently of any statute that a married woman has a right of action for such a tort enforceable by suit in her own name without joinder of her husband as plaintiff."

This statement in the text is well supported by the authorities cited. Among the later cases to the same effect is Shalit v. Shalit, 126 Me. 291, 138 A. 70.

Were this a question of first impression in our state, with no decisions indicating which line of the conflicting decisions our courts have favored, we should, in view of the conflict in other jurisdictions, feel at liberty to adopt that line of decisions "not inconsistent with the conditions and circumstances of our people." Grigsby v. Reib, supra. The better reason, we think, supports the right of a married woman to maintain the action. To deny her that right would amount, in many cases, to a denial of any redress for her injuries. The husband could not maintain the suit. His connection with the wrong would bar him. Since the husband cannot join, she must sue alone or not at all. Many women have religious scruples against divorce. To deny such a woman the right to maintain the action except on condition that she first procure a divorce would be a literal denial of a remedy for a wrong.

We also think her right to sue is supported by the authorities in our state. The following decisions, among others, while not directly deciding the question, are persuasive, and indicate the trend of our decisions: Nickerson et al. v. Nickerson, 65 Tex. 281; Davis v. Davis (Tex. Civ. App.) 186 S. W. 775; Burnett v. Cobb (Tex. Civ. App.) 262 S. W. 826.

In Speer's Law of Marital Rights in Texas (3d Ed.) § 109, p. 146, the question is carefully considered and this conclusion is drawn: "While with us there is no express enabling statute authorizing a wife to maintain such an action, yet it is not thought that such a statute is necessary, as the rules of the common law have not been incorporated in our marital system, but their rigor has been greatly relaxed, and they are in many instances directly antagonistic to the well-defined rules of our later marital jurisprudence."

Section 110 of this same work was added in the third revision, and it is there stated that the question has now been directly decided by our courts. It would seem that Smith v. Womack (Tex. Civ. App.) 271 S. W. 209, should be regarded as an authority for maintaining the action. A writ of error was refused in that case. The court there sustained the wife's right to an injunction to prevent another woman from meeting and conversing with her husband. We think the same reason that would authorize her suit for injunction would authorize one for damages on account of the alienation of affections. We therefore conclude that, upon reason and authority, the appellee had the right to maintain her suit as brought.

 It is insisted that the evidence is insufficient to support the judgment in that it fails to establish that appellant was the active cause of the alienation of the affections of appellee's husband. Neither Stoneham, Mrs. Norris, nor any other witness testified in her behalf. All of the testimony comes from appellee and her witnesses without contradiction. It discloses the following facts:

Appellee and her husband were married in 1902. To them were born three daughters, who have grown to womanhood, and two of them are married. Prior to the time Stoneham met appellant, he had been a faithful husband and indulgent father. He was a civil engineer and state surveyor. His earnings were sufficient to provide and maintain a home for his family and to support them properly. His wife has been faithful to him through all the years, and, to use her language, she "loved him better than anything in the world." Mrs. Jeff Dobbs, a neighbor, testified: "As to how Mr. Stoneham treated his family before 1928: I used to say I thought Mr. Stoneham was the most devoted husband I ever knew." Stoneham left home in 1928 to do some work in the oil fields near San Angelo. At first he visited his home frequently, but after a time his visits became increasingly less frequent and his contributions to the support of his family began to fall off until he finally ceased to return to his home or to make any contributions to his family's support, and appellee was forced to secure employment to sustain herself. The appellant was the proprietor of a ladies' ready-to-wear shop, in connection with which there was a beauty shop. In some way Stoneham became interested in this business and invested large sums of money in purchasing equipment for this beauty shop, described by his brother as "a hair curling machine there and a nice big chair, something like a barber chair, and kinds of massage creams, and two or three other apparatuses that I did not understand what they were for." Stoneham's brother further testified that, during the year 1930 he was in San Angelo several times and saw Stoneham and Mrs. Norris together at the same house. He saw Stoneham's clothes and books at this house, and testified that: "I have been out there at 9 o'clock in the morning and 9:30 or 10 o'clock at night, and he would still be there and when I would leave I would leave him there. As to who was living there with him, Mrs. Pearl Norris and another girl that worked at the beauty parlor, I don't know her name,—her name was Gladys, I don't know her last name. As to whether I would notice Gladys there and Mrs. Pearl Norris and Mr. Stoneham when I would leave at night; on two or three occasions I left them all three there at night."

 This evidence amply justified the trial court's conclusion that Stoneham's affections were alienated from his wife and bestowed upon appellant. There is no evidence that appellant was the aggressor, and the question is presented as to the sufficiency of the evidence to establish intent and malice on the part of appellant. In other words, can a woman be held liable for the alienation of the affections of another woman's husband when she was not the original aggressor, but the husband himself took the initiative in bringing about the situation resulting in the alienation? During the present generation the sphere of woman's activities has been greatly enlarged. She has now embarked in business enterprises and professional pursuits to a degree unknown a generation ago. This new situation brings her constantly in contact with men and the right of both to carry on business transactions together must be protected. It is not a vice to be friendly, pleasing, and attractive. The mere fact that a married man centers his affections on a woman other than his wife does not of itself subject her to liability for the wife's injuries. As is well said by Justice Bouldin of the Supreme Court of Alabama in Woodson v. Bailey, 210 Ala. 568, 98 So. 809, 812:

"When confronted with a growing evidence that a married man is unduly interested, a young woman may find herself in a difficult place. A wish not to offend, to avoid a possible scene, even a sense of sympathy often invoked by the man, may impel her to remain passive, and not give him that sort of rebuff which he deserves."

Had this record disclosed a state of facts where Stoneham had become infatuated with appellant and she had done nothing to encourage him, or to cause him to lose his affections for his wife, no damages properly could have been awarded against her. But the evidence warrants the conclusion which the trial court must have made that she lived with him knowing him to be a married man. She was not the mere passive recipient of his affections. The injury to the wife for which the law affords her a redress in actions of this character is the loss of consortium. This right includes the right to the affection, society, comfort, and assistance of her husband. To render one liable to a wife thus wronged, no ill will or spite toward her need be shown. Malice inheres in the very act of consciously doing that which harms the wife. One must be presumed to intend the natural consequences of his or her acts. Appellant must be charged with the knowledge that her acts would produce the very result complained of in this case. This view is so well expressed in the leading case of Hart v. Knapp, 76 Conn. 135, 55 A. 1021, 1023, 100 Am. St. Rep. 989, by Chief Justice Torrance of the Supreme Court of Errors of Connecticut, that we quote at length from his opinion, as follows: "In what she did with the husband, she did with full knowledge that it was wrongful, and that it would, as the plaintiff claims it did, result in harm to the plaintiff. The gist of the defense set up in the requests is that the defendant did a great wrong by the persuasion of the husband. We know of no rule of law, civil or criminal, that absolves her from liability for such wrong because of such persuasion. Solicitation, persuasion, enticement, temptation, however urgent, powerful, or alluring, do not constitute duress. In law, so far as regards the plaintiff, what the defendant did with Hart, she did of her own free will; and she is responsible to the wife for the results of her conduct with the husband, even if it be true that he persuaded her to do what she did, and 'was the active or aggressive party' in procuring her to do so. In actions for criminal conversation, at common law, the fact that the wife was, so to speak, the seductress, was of no avail as a defense (Egbert v. Greenwalt, 44 Mich. 245, 6 N. W. 654, 38 Am. Rep. 260; Bigaouette v. Paulet, 134 Mass. 125, 45 Am. Rep. 307; Bedan v. Turney, 99 Cal. 649, 34 P. 442; Moore v. Hammons, 119 Ind. 510, 21 N. E. 1111; Kroessin v. Keller, 60 Minn. 372, 62 N. W. 438, 27 L. R. A. 685, 51 Am. St. Rep. 533), although in some cases it has been admitted as bearing upon the quantum of damages (Sieber v. Pettit, 200 Pa. 58, 49 A. 763). Some of the reasons given for applying such a rule in such actions may not exist in actions brought by the wife to vindicate her right to the society and affections of her husband, but it is difficult to see why an analogous rule should not be applied in a case like the present 'to the defense that the husband was the seducer."

All assignments challenging the sufficiency of the evidence to support the judgment for damages for alienation of affections are overruled.

 The other cause of action for which recovery was had below was based upon allegations of the petition that appellee's husband was induced by appellant to invest large sums of money in the purchase of a house and lot in the city of San Angelo, and in the purchase of a beauty parlor known as the "Norris Beauty Shoppe," the title to both of which properties was taken in the name of appellant, and that he was also induced to invest community funds in equipment for the beauty shop. The prayer was for judgment against appellant impressing upon the real estate and the beauty shop a trust and lien for whatever amount of money she might show belonging to her had gone into said properties, and for an injunction perpetually enjoining the appellant from disposing of said properties. We do not find it necessary to discuss at length the questions suggested in connection with this cause of action. We think it sufficient to state that neither the pleadings nor the evidence supported the recovery awarded. The petition alleged that $2,000 had been invested in the beauty shop and $3,000 in the house and lot. There was no proof that title to either of these properties was not in Stoneham himself rather than the appellant. The judgment fixed a lien to the extent of $1,750 upon all of the "goods, wares, merchandise, fixtures and appliances in said beauty shop," and a personal judgment was awarded against appellant for the sum of $1,750 without any pleading claiming liability against her for said amount.

The evidence failed to disclose what amount, if any, was invested in the beauty shop, and what amount, if any, was invested in the real estate. There was some hearsay evidence as to the amount of the total investment, but no effort was made to segregate the items thereof and allocate to each property the amount invested therein. All that portion of the judgment awarding appellee a recovery of $1,750 against appellant and fixing a lien upon the beauty shop will be reversed.

There are many bills of exceptions in the record, complaining of alleged errors of the trial court in the admission of testimony. These bills complain of evidence in the most part having to do with that portion of the judgment which we shall reverse, and they

need not therefore be considered. There is no bill of exceptions showing any reversible error in admitting evidence pertaining to the issue of alienation of affections.

It is therefore our order that the judgment of the trial court, in so far as same awarded appellee a recovery of $3,000 against appellant for the alienation of the affections of her husband, be affirmed, and that in all other respects the judgment be reversed and the cause remanded.

Affirmed in part, and reversed and remanded in part.