ETHEL M. MCCOLLISTER

*vs.*

LILLIAN MCCOLLISTER

Androscoggin.    Opinion August 22, 1927.

*A parent is liable for any wrongful alienation of the affections of a married child but only when the parent's conduct is malicious.*

*It is incumbent on the plaintiff to prove malice on the part of the defendant.*

*Liability attaches only when the parent interferes with hostile, wicked or malicious intent or simply because she does not wish the marriage relation to continue longer.*

The law has always recognized a broad distinction between the permitted attitude of parents toward their married children, in connection with their domestic difficulties and the attitude which may be taken by strangers under like circumstances.

It is not every interference between husband and wife nor every participation in their disagreements which renders a parent liable in damages.

A mother may advise a son in good faith and for his good, to leave his wife, if she believes that further continuance of the marriage relation tends to injure his health or destroy his peace of mind.    She may persuade her son.    She may use proper arguments.    Whether the motive is proper or improper is always to be considered.    If she acts in good faith, for the son's good, on reasonable grounds of belief, she is not liable.

This case does not meet these standards.    It is bare of evidence of malice or improper motives on the part of the defendant.    The jury erred in its findings.

On general motion for new trial.  An action for alienation of husband's affections brought by plaintiff against her husband's mother. The general issue was pleaded and the jury rendered a verdict of $2,708.33 for the plaintiff, and the defendant filed a general motion for a new trial.  Motion sustained.

The case fully appears in the opinion.

*Benjamin L. Berman, David V. Berman, Jacob H. Berman and Edward J. Berman,* for plaintiff.

*Harry Manser and F. O. Purington,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, PATTANGALL, JJ.

PATTANGALL, J.  Action on the case by wife for the alienation of the affections of her husband by his mother.  The plaintiff obtained a verdict.  The case comes before this Court on motion in the usual form.

The plaintiff, then a divorcee, twenty-eight years of age, and the mother of a son, married the son of the defendant, at Portland, November 17, 1919.  He was a widower, his wife having died in the spring of the same year.  He was then thirty-six years old and also had a son, some five years older than that of the plaintiff.

For about a year after the marriage the parties thereto resided in Boston, then returned to Maine and made their home in Mexico, where the husband was employed in the paper mills, until May 1923.

The defendant, with her husband, who deceased in October 1926, lived in Mechanic Falls.  Plaintiff and defendant met but once prior to the marriage but after that event visited each other frequently and were apparently on good terms during, at least, six years subsequent to that time.

In the winter of 1923, the husband of the plaintiff developed a cough, which was attributed to matters connected with his employment and which became the subject of anxiety to the defendant and to her husband, who was a physician.

Plaintiff had expressed a desire for a country home.  Her husband's health seemed to demand a change of employment.  Defendant was anxious that her son should be near her in her old age.  And by agreement with all concerned Dr. McCollister purchased a home for

the use of his son and family, located within about a mile of his own home, plaintiff and her husband moved there and continued to reside there until they separated in March 1926. Since the separation the husband has made his home with his mother.

Plaintiff claims that defendant interfered unwarrantedly in her domestic affairs and if not the immediate cause of the separation, actively prevented a reconciliation between her husband and herself. Defendant claims that the separation was caused by the unfortunate disposition of the plaintiff, by her unreasonable jealousy and constant fault finding. There is evidence tending to show that a contributing cause if not the controlling one was the attitude of the husband himself, who appears in the case in a most unfavorable light and there was more or less trouble on account of the two boys.

The case was submitted to a jury under presumably proper instructions. No exceptions are presented here. No error of law is made the subject of complaint. The issues involved were purely matters of fact. Under such circumstances this court is loath to disturb the verdict. It needs no citation of authorities to support the proposition that the findings of a jury on an issue of fact should not be overturned provided that any reasonable justification for those findings can be found in the evidence. We do not find such justification here.

Prior to 1913 no suit would lie, in this state, in favor of a wife for the alienation of her husband's affections, against any defendant, under any circumstances. Such actions were declared to be not only without authority in common law but against public policy. *Doe* v. *Roe*, 82 Me. 503. *Morgan* v. *Martin*, 92 Me. 190.

In 1913, the statute under which such actions are authorized was enacted. It reads—"whoever being a female person more than eighteen years of age, debauches and carnally knows, carries on criminal conversation with, alienates the affections of, the husband of any married woman or by arts, enticements and inducements deprives any married woman, of the aid, comfort and society of her husband shall be liable, etc."

It seems probable that the legislature had in mind, in enacting this law, an entirely different situation than that presented by this case but the language used, when given its full legal effect, obliged the court to construe it as embracing similar cases to this. Our

court, however, has construed it strictly, as being in derogation of common law. *Farrell* v. *Farrell,* 118 Me. 441; *Howard* v. *Howard,* 120 Me. 479. Prior to the passage of this law in suits brought against parents for alienation, this court held the plaintiff within certain strict limitations which are not enlarged by the statute.

Presumably there is a legitimate field for actions brought under this statute and for actions based on charges of alienation generally but the nature of the claims so asserted is such that such suits furnish a most convenient weapon for extortion and the right to bring them is a constant temptation to the unscrupulous. Every such case should be subjected, therefore, to the most careful scrutiny not only by jurors but by the appellate court. Especially is this true in cases in which parents are defendants.

The common disagreements which arise among the members of a family; the frank criticism of each indulged in by the others; words, spoken in haste and in the freedom of confidential family intercourse, taken out of their original setting, and reproduced in solemn testimony in a court room, magnified and distorted by bias, prejudice and interest, may be made to appear to carry inferences never originally understood or intended.

The law has always recognized a broad distinction between the permitted attitude of parents toward their married children, in connection with their domestic difficulties and the attitude which may be taken under like circumstances by strangers.

It is not every interference between husband and wife nor every participation in their disagreements which renders a parent liable for damages.

A parent is liable for any wrongful alienation of the affections of a married child but only when the parents conduct is malicious. 30 C. J. 1127.

The rule is so laid down in this state in *Oakman* v. *Belden,* 94 Me 280, and in *Wilson* v. *Wilson,* 115 Me. 341. It is incumbent on the plaintiff in such cases to prove malice on the part of the defendant.

In the latter case the court quotes with approval *Hossfield* v. *Hossfield,* 188 Fed. Rep. 61, in which it was held that if the jury found that the separation was brought about by the mother, the question was, "Did the mother act from malice or from proper parental regard?"

The former case held erroneous an instruction that if the separation "was the result of the active interference of the parents or if the wife would have gone back if it had not been for their interference, either by threats, persuasion or arguments—they have done him a wrong and he is entitled to compensation for that wrong." The appellate court holding that the instruction was too broad in that it did not distinguish legitimate action from malicious action, in these respects, on the part of parents.

This opinion adopts the doctrine laid down by Chancellor Kent in *Hucheson* v. *Peck*, 5 Johns 196   "A father's home is always open to his children.   Whether they be married or single, it is still to them a refuge from evil and a consolation in distress.   Natural affection establishes and consecrates this asylum.   It should require more proof to sustain this action against a father than against a stranger. It ought to appear either that he detained his daughter against her will or that he enticed her away from her husband from improper motives.   But as unworthy motives are not to be presumed they ought to be positively proved or necessarily deduced from facts and circumstances."

In *Oakes* v. *Belden*, supra, the court said:   "It is universally conceded that a parent stands on different grounds from a stranger. Though the wife has gone out from the parental home and joined her husband 'for better, for worse' and though she owes to him marital allegiance and he possesses the first right to her affection and comfort and society, it is nevertheless true that the parental relation is not ended nor has parental affection and duty ended.—She may properly leave her husband.   In such case to whom shall she fly except to her parents?   And from whom shall she seek advice except from them?   And such advice may, we think, be enforced by reasonable arguments.—A parent may advise his daughter, in good faith and for her good, to leave her husband, if he believes that the further continuance of the marriage relation tends to injure her health or to destroy her piece of mind so that she would be justified in leaving him.   A parent may in such case persuade his daughter.   He may use proper and reasonable arguments drawn, it may be, from his greater knowledge and wider experience.   Whether the motive was proper or improper is always to be considered.   It may turn out that the parent acted upon mistaken premises, or upon false

information, or his advice and his interference may have been unfortunate, still, if he acts in good faith, for the daughter's good, upon reasonable grounds of belief, he is not liable to the husband."

The liability attaches only when the parent interferes "with hostile,. wicked or malicious intent or simply because he does not wish the marriage relation to continue longer."

The present case falls far short of measuring up to the standards set by these authorities.   The defendant is a widow, seventy years of age.   She may have been deceived by her son as to the real cause of his domestic troubles.   She may have failed to take an impartial view of the differences which arose between him and his wife.   She may have unwisely interfered in his behalf.   He may have been entirely unworthy of her love and confidence.   But the case is bare of any evidence that she was, in any way, actuated by malice or improper motives in anything that she did or said or in any attitude that she assumed.   The jury manifestly erred in its finding.

*Motion sustained.*