JACOB MILLER *vs.* WILLIAM LEVINE ET AL.

Kennebec.      Opinion March 30, 1931.

154

*Merrill & Merrill*, for plaintiff.
*F. Harold Dubord*,
*Perkins & Weeks*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, JJ.

BARNES, J. Plaintiff, a resident of Boston, Mass., in suit for alienation of his wife's affections, recovered a verdict against that wife's parents; and this court is to determine, on a motion for a new trial, whether the verdict is founded on the law or, if so, is recoverable on the evidence, and, if recoverable, whether or not the damages are excessive.

In considering the law applicable to this case, the jury was limited to a narrow field.

Though actions of this sort are becoming more numerous as the years go by, the law justifying a husband's recovering damages of his wife's father is the same today as when first announced in this country in *Hutcheson* v. *Peck*, 5 Johns., 96, tried in 1808. Today, as then, before assessing damages, the jury must find, under the rules of law announced by the trial judge, that the defendants, or one of them, caused the separation complained of; that the interference, if any, was not justified; that since the parent's house is from causes of natural affection an asylum to which a daughter, married or unmarried, may at any time flee, and since under circumstances commonly arising parents, if able, may be compelled by law to contribute to the support of a daughter and her children, a parent, sued as here, stands in different footing than would a stranger; that the animus actuating the parent must be first and most diligently sought.

In marshaling the evidence the jury must bear in mind that the burden is upon the plaintiff to make out a case of aggravated interference or detention; that it is a parent's right, so long as they both shall live, to give advice and counsel to his child; that there

is a strong presumption that in counseling his child a parent's motives are pure and right; thus that the procuring of a separation was an unlawful procuring; that if on reasonable grounds a parent believes the further continuance of the marriage relation tends to injure his daughter's health, or to destroy her peace of mind, so that she would be justified in leaving her husband, he may, in such case, persuade his daughter. He may use proper and reasonable arguments. If it turns out that the parent acted upon mistaken premises or upon false information, or that his advice and his interference may have been unfortunate; still if he acts in good faith, for the daughter's good upon reasonable grounds of belief, he is not liable to the husband.

The jury must be satisfied, within the law, that the parent maliciously alienated the daughter's affections.

They must remember that malice is not to be presumed, but must be proved by evidence of wrongful and unjustifiable conduct, prompted by wicked or malicious intent.

These principles, recognized before Maine became a state, have been accepted and held controlling, so far as we are able to discover in all our states, and have recently been affirmed in *Oakman* v. *Belden*, 94 Me., 280, 47 Atl., 553; *Wilson* v. *Wilson*, 115 Me., 341, 98 Atl., 938; *Shalit* v. *Shalit*, 126 Me., 291, 138 Atl., 70; *McCollister* v. *McCollister*, 126 Me., 318, 138 Atl., 472.

Guided by the law, as above, the jury listened to evidence artfully produced, in manner and with intimation to color every word of either defendant attempted to be reproduced.

It is our duty to review the record and determine whether under their oath the jurors made a right finding on the primal question of actionable wrong on the part of either defendant.

We are aware that "The credibility of witnesses and the weight to be given to their testimony is particularly within the province of the jury and we should not set their finding aside unless manifest error is shown or unless it appears that the verdict was the result of bias or prejudice. . . .

"Upon a motion for a new trial after verdict the whole evidence is to be examined with minute care, and the inferences which the jury might properly draw from it are adopted by the court.

"If therefore upon the whole case justice has been done between the parties and the verdict is substantially right no new trial will be granted although there may have been some mistakes committed in the trial. The granting of a new trial is not a matter of absolute right in the party but rests in the judgment of the court and is to be granted only when it is in furtherance of substantial justice." *London* v. *Smart*, 127 Me., 377, 143 Atl., 466.

Now what are the facts?

The evidence is voluminous and on many minor points conflicting, but it has been thoroughly examined.

Regard for proper length of an opinion forbids quotation.

Defendants are aged people, residents of Waterville for more than forty years, the father a merchant. They have nurtured nine children, their house has been their children's home as needs required. Plaintiff was twenty-seven years old, his wife some three or four years younger when they were married on December 13, 1917.

For the first year after marriage they lived with defendants, in their house in Waterville. While here plaintiff served as clerk in the store of his father-in-law, working for wages, or as he claims, for the support of himself and wife.

Later plaintiff embarked in the pickle business in Boston, and defendants furnished twenty-five hundred dollars in money to set up a home, and by endorsing notes aided in establishing and maintaining the business until, early in 1927, an assignment for the benefit of creditors brought a pause in his business career. In the meantime two children had been born, and the summer season had been spent by plaintiff's family each year in the home of defendants, to whom, as plaintiff admits, his indebtedness "kept increasing," until it had mounted to nearly if not quite $30,000.00 before the assignment, and out of the assignment none of the debt to defendants was paid.

A part of the indebtedness was due to indorsement of notes to purchase the equity in a three-family apartment house in Brookline, purchased in Mrs. Miller's name, and at time of trial the equity was worth not more than $800.00 to $1,300.00 unless real estate values there had increased.

After the assignment *hiatus*, plaintiff was incorporated, as he says, so that in 1928 Miller Brothers, Inc. was processing and marketing condiments and cereal food. It is in evidence on both sides that representations were repeatedly made by the young couple that money must be had to continue the business, and that the wife made frequent trips to Waterville to procure additional loans; and plaintiff admits that as late as February, April, and June, 1928, William Levine loaned him or them $4,000.00.

There is no claim of diminution of wifely affection until the summer of 1928.

In that season, after the younger grandchild had been taken to defendants' home for the summer, both defendants went to Boston to see an infant, born in July to their daughter Betty and, driving to the place of business of plaintiff, found it locked.

Next morning, at the place of business, whether by design or accident, plaintiff and wife met the defendants and plaintiff's father, David Miller, with his son, Samuel. A conference was held as to contributing further funds to the corporation, and plaintiff's father announced that he had given plaintiff $8,000.00 and "didn't give him any more," while Samuel testified he then told defendants that he had furnished plaintiff "from ten to twelve thousand dollars . . . not getting any notes and any interest."

The conference broke up, and it is claimed by plaintiff that defendants then threatened him that unless he paid his debt to them they would take his wife and children from him. This defendants deny.

The only witnesses produced by plaintiff to corroborate his claim, who are not related by blood, were two men and Mrs. Riley.

Neither of the men testified to being present at or within hearing of the conference, and we are satisfied Mrs. Riley's term of service at the pickle factory had ended before the conference, the day after the factory was found locked.

Plaintiff claims that his wife's love for him, abundant up to the time of the conference, decreased thereafter. From the fact that in the spring of 1930 she instituted proceedings for divorce from him, he argues that he has lost her affection.

And he charges acts of alienation beginning at the conference alluded to.

He further testified that during this visit of the parents to Boston, his mother-in-law and his wife leased to one Kaufman the apartment in which plaintiff was living, together with the furniture and furnishings, for which latter he testified that he had paid more than $8,000.00.

The wife and Mr. Kaufman give in detail a very different story which, if believed, shows that plaintiff not only was consulted in this move to reduce living costs and gain a substantial monthly rental, but that he acted in negotiating the lease.

The summer of 1928 was spent by Mrs. Miller, partly in Waterville and partly in Boston. Plaintiff testified his wife served then as treasurer of the business and was with him four or five months of the year in Boston, where the couple lived in conjugal intimacy at the homes of relatives, and in defendants' home when he visited there. He testified that his relations with defendants during that year "were very pleasant."

It is evident that they received him as a son, made him welcome, and that they did not interfere with his marital rights unless, as he says, they refused to allow the family to be returned to Boston.

Even so late as the Thanksgiving season of 1928 plaintiff visited for days in defendants' home and was accorded every courtesy as a son.

In July of that year he joined with his wife in conveying the Brookline apartment to Mrs. Sarah Levine, and while he denies that he owed defendants more than $8,000.00 at this time, we read in the record his debt to them was then more nearly $28,000.00; and this does not include an account against him at William Levine's store running from 1924 to 1927, amounting to $613.96, and two clothing bills paid by defendants for him in 1920 in the sum of $143.00.

An exhibit, William Levine's account book, shows, too, that from January 15, 1928, to date of trial, William Levine has paid in interest on plaintiff's notes, many of them doubtless renewal notes, the sum of $2,224.00.

Two letters of plaintiff were introduced, one under date of Oc-

tober 1, 1928, in which he sends regards to the "dear folks," and another undated, but written in the summer of 1929, in which he sends his "regards to the folks."

In the summer of 1929, plaintiff received and entertained his wife in Boston, enjoying full conjugal relations; and in rebuttal, at the end of the evidence, by his counsel, referring to that season, he was asked, "Were things pleasant and harmonious between you and Frieda?", and replied, "Yes, sir."

Stress is laid in argument upon plaintiff's testimony that the parents threatened to disinherit their daughter unless she would forsake him. But, their reception of their son-in-law, and their treatment of him, as he frequently visited them until the end of the year 1929, as testified to by him, is such that none but the most credulous would believe they threatened such dire proceedings.

After the fall of 1929, plaintiff wrote never a letter to his wife, and sent no messages to her in letters he wrote to his son. And he has not for long months sent her any money.

He has lost the affection of his wife.

It is not for us to speculate as to what quenched the flame.

While he maintained a home in Brookline, and while, as he testified, he was giving his wife from $50 to $80 a week, the gas supply for cooking was cut off for nonpayment, as he testified, "twenty times," the milk bill unpaid grew to proportions embarrassing to the housekeeper, the home was sold for unpaid taxes, and the prospect of a home since the last business venture had become drear, for as he testified, he didn't give a hurrah for the business; had quit keeping accounts; didn't give a darn for it.

He may not have said, "unless Mr. William Levine, my father-in-law, will furnish me with all the funds I need, I intend to park my wife, Frieda Miller, and the children on his front porch and go away." His denials in evidence would be more satisfying, if in matters of major importance his regard for his oath as a witness had prompted him to accuracy and readiness in answer.

The statements of both defendants that William would buy him a business in Waterville, are not denied.

After twelve years of wedded life, with a son and daughter, but

with no home, the wife prefers to face the future without obligation to plaintiff.

The question for us is, upon all the evidence for the plaintiff, including inferences logically drawn, are we satisfied that the defendants, or either of them, alienated this wife's affections? His testimony stands in the main, without corroboration.

As we have recently said, "The nature of the claims (on charges of alienation) is such that such suits furnish a most convenient weapon for extortion and the right to bring them is· a constant temptation to the unscrupulous. Every such case should be subjected, therefore, to the most careful scrutiny not only by the jurors but by the appellate court. Especially is this true in cases in which parents are defendants." *McCollister* v. *McCollister*, *supra*.

A new trial is the right of a suitor when its granting will tend to effectuate justice.

"A verdict will be set aside as against the evidence when it is not such as reasonable minds are warranted in believing, as when it is unreasonable, or inconsistent with the proved circumstances of the case, or when the evidence to the contrary of the verdict is so overweighing as to induce the belief that the jury were led into mistake, or were so moved by passion or prejudice as not to give due consideration and effect to all the evidence." *Garmong* v. *Henderson*, 114 Me., 75, 95 Atl., 409.

We can not say there is a preponderence of evidence to sustain the verdict.

Nor does it appear to us that the scales of evidence balance.

It seems to this court that the plaintiff failed to make out a case against either of his wife's parents.

*Verdict set aside.*