FREIDA A. BLOCK

*vs.*

SHAINA BLOCK, ETHEL GORDON AND SARAH BLOCK.

Cumberland.     Opinion, November 9, 1933.

*J. E. F. Connolly,*
*Arthur D. Welch,* for plaintiff.
*Frank A. Tirrell, Jr.,* for defendants.

SITTING : PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

STURGIS, J.    This action on the case for the alienation of the affections of the plaintiff's husband comes before this Court on a general motion for a new trial. The defendants, who are respectively the mother and sisters of the husband, are sued jointly, and a verdict against them for $4,500 was given in the trial court. The action is brought under Section 7 of Chapter 74 of the Revised Statutes.

The plaintiff, whose maiden name was Freida Seigal and lived in Portland, Maine, was married on May 24, 1931, to Myer Block of Thomaston. They and their families are Jewish people and the marriage was brought about in accordance with their customs and the tenets of their religion. They met at the instance of match-makers, their courtship followed only after a parental conference

and approval, and their engagement and wedding, attended by the customary formalities and ceremonies, were supervised and directed by their families. The parents of the young man were getting along in years and both were in poor health, and it was their desire that their son, who ran the farm on which they lived, should marry and bring back a wife to assist in the maintenance of the home. One of their daughters had married and moved away and the other, employed as a bookkeeper in a nearby city, was no longer willing, if able, to carry the burden of the housework. It can not be doubted, when this record is read, that Myer Block was led into this marriage by the promptings and insistence of his family and, with him, it was more a matter of duty and convenience than of desire or affection for the woman who had been chosen for him. It must be assumed also that the situation was not very different with the girl. She had no acquaintance with young Block until the matchmakers brought them together, and in the following two years which passed before they were married, she saw him but a few times and then only for short periods. He was by no means an attentive or ardent lover and it is difficult to believe that he awakened in the plaintiff any real love or affection for him. This is the situation, as portrayed by the evidence, when this couple were married, and it furnishes some explanation of their rather extraordinary subsequent experiences.

The honeymoon was spent, for the night of the wedding, at a local hotel and, for the rest of the week, in Portland at the house of the bride's mother. The plaintiff's story, as she told it to the jury, is that, finding her husband apparently normal physically, she was kissed and caressed by him in her marriage bed and, though he protested his love and solicited intercourse and she was willing, when her consent was given, it was rejected with the explanation that he had been told by his family to wait a year. While the couple stayed in Portland, the husband continued his refusal to have intercourse, and there was no change when a few days later he took his wife to Thomaston and installed her as a member of his parents' household. She lived with him in this unusual and unnatural manner, except as she came to Portland for short visits, until the following fall when, as she says, her husband, having sent her to her mother with a promise to join her in a few days and arrange for a

different home, failed to come to her, went to Massachusetts to live, and refused to allow her to again live with him. A physician whose statement can not be questioned verifies the plaintiff's claim of virginity and the husband confirms it, asserting, however, that the fault was the woman's, that she at all times repelled his advances, even to the extent of using force, and though he sought intercourse, he was unable to overcome her resistance.

Within a week after Myer Block came to his parents' home, trouble arose in the family. It is very apparent, as is often the case in certain families, that Shaina Block, the young man's mother, ruled her household and demanded and received almost implicit obedience from the members of her immediate family. Her dominion over her son, as well as her other children, was practically complete and her word was law. This situation was not changed when the son married. The mother-in-law received the young bride into her home at first in a friendly and kindly spirit, but within a few days turned against her. The plaintiff told the jury nothing she did suited her mother-in-law, who pronounced her no good, without brains, and unfit to be a wife for the son. She says she was not allowed to join the family at their meals, but was compelled to cook her own food and eat alone. She insists that her request to her husband that they be given the use of empty rooms upstairs for an apartment was denied by Mrs. Block with the statement, "No, sir; she don't deserve any home and she can go where she belongs." She told the jury that her husband left money in his clothes for her and the mother-in-law took it and, upon the wife's protest, said, "I will try to separate Myer and you." Continuing her story, this plaintiff says that her husband's mother repeatedly in her presence advised him to get rid of her, admonished him not to have intercourse with her, and advised that, if this continued for six months, a separation could be obtained. In short, this plaintiff's testimony is, and there is some corroboration, that her mother-in-law, without just cause, developed an intense hatred for her, belittled her to others and particularly her husband, treated her harshly and, dominating the husband as she had before his marriage, advised and induced him to continue withholding his love from his wife, and finally to send her away and refuse to allow her to return.

As the plaintiff portrays her married life, however, her unhappiness and the loss of her husband's society and affection are in part chargeable to other members of his family. There was a sister, Sarah Block, who, although she worked in the daytime, lived with her parents on the farm at Thomaston and was one of the family circle. Another sister, Ethel Gordon, married and living in Rockland, was a frequent visitor and at times spent weeks with her family at the Block homestead, and, without going into the details of the testimony as it affects these women, both named as defendants, it is sufficient to state that there is evidence which, if believed, shows clearly that these sisters-in-law of the plaintiff joined their mother, Shaina Block, in her disapproval of their brother's wife, at times refused to speak to her, called her a greenhorn, and unfit to associate with them, and to their brother added their advice that she was no good and he ought to get rid of her and, learning that the couple were not living as man and wife, advised him to keep away from her and separate from her. The same line of testimony indicates that they conferred with their mother on this matter, supported her in her denouncements of the plaintiff and advices to the husband, and joined with her in an effort which eventually culminated in a full and complete alienation of such affections as this husband had for his wife and her abandonment by him.

The defendants insist that they at all times were kind and considerate to the plaintiff and continually endeavored to make her happy and contented. They assert that they tried to keep the young couple together and never in any way suggested or encouraged an unconsummated marriage or a separation of the spouses. They charge the plaintiff with a violent temper, a distaste for life on a farm, a disrespect for her mother-in-law, and a constant quarreling with her husband, but do not admit that on those grounds or any other they lost their affections for her or interfered with her relations with her husband. In pleading and proof, they deny the allegations of the plaintiff's writ in toto, and contend that the plaintiff lost the society and affection of her husband solely through her own treatment of him, his distaste for and dissatisfaction with married life, and his voluntary abandonment of it.

The law applicable to this case is well settled. Although a parent may not with hostile, wicked or malicious intent alienate the affec-

tions of her married son, yet she may advise that the marriage relation be broken up if, on reasonable grounds, she believes that a further continuance of it tends to injure the health or destroy the peace of mind of the child so that he would be justified in leaving. A parent may in such case persuade the child. She may use proper and reasonable arguments and, though it turn out that the parent acted on mistaken premises or upon false information or that her advice and interference may have proved unfortunate, still, if she acts in good faith for the child's good upon reasonable grounds of belief, she is not liable to the wife. Malice is not presumed. It must be proved. *Wilson* v. *Wilson*, 115 Me., 341, 98 A., 938; *Shalit* v. *Shalit*, 126 Me., 291, 138 A., 70; *McCollister* v. *McCollister*, 126 Me., 318, 138 A., 472; *Miller* v. *Levine*, 130 Me., 153, 154 A., 174. And it may be conceded that there is abundant authority for the application, under special circumstances, of the same rule in actions against brothers and sisters. *Powell* v. *Benthall*, 136 N. C., 145, 48 S. E., 598; *Luick* v. *Arends*, 21 N. D., 614, 132 N. W., 353; *Ratcliffe* v. *Walker*, 117 Va., 569, 85 S. E., 575; *Baird* v. *Carle*, 157 Wis., 565, 147 N. W., 834. But if in an action by a wife there is evidence, upon which the jury would have a right to find that a parent, or brothers and sisters who stand "in loco parentis," have actively interfered, to cause a son and brother to abandon the wife, and have deprived her of his affections and the comfort and solace of his society, through hatred or malice toward the wife and not for the purpose of affording a proper protection to the husband and furthering his true welfare, then, even within the rule just stated, the case is for the jury and, if the facts so in evidence are deemed proved, recovery must be granted.

Although counsel for the defendants, on the brief, argues the point, the defendants themselves nowhere in their pleading or proof attempt to set up any justification for an interference on their part in this plaintiff's domestic relations. As already stated, they insist that they did not interfere. That was their testimony upon the stand, and upon it they rested their defense. Justifiable solicitude for and advice to the son and brother in the intended furtherance of his welfare and happiness is not the case they present.

The issue before this jury was clear. The story of the plaintiff, if believed, disclosed a malicious alienation of the affections of her

husband by these defendants, actuated by a dislike and ill-will towards the plaintiff, growing out of their own personal quarrels with her, which began with the defendant Shaina Block and was joined in, with concert of mind and action, by her daughters, Sarah Block and Ethel Gordon. The jury saw and heard the plaintiff and her witnesses and there is nothing in the evidence which leads us to conclude that they did not have a right to believe them. Doing so, a finding that the defendants were liable was just and proper.

The damages awarded, while liberal, are not manifestly excessive on the case made out by the plaintiff. As unworthy as this husband appears to have been, in actions unsexed or the puppet of family control, a man without a trade and without means or home of his own, still, if she desired his company, his affection such as it was, and such support and maintenance as he could give her, she had a right to it, and for its loss she is entitled to compensation. She was entitled to damages for the humiliation which she endured as a result of her abandonment. Punitive damages were not unwarranted. *Allen* v. *Rossi*, 128 Me., 201, 146 A., 692. All these elements of damage the jury undoubtedly weighed in the scales of their judgment and experience as they fixed the amount of the award. No sufficient reason appears for declaring their verdict manifestly wrong.

*Motion overruled.*